## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Jackie Nink Pflug                                   :
7611 Paulsen Dr.                                    :
Eden Prairie, MN 55346                              :
                                                    :
and                                                 :
                                                    :
Jim Olsen                                           :
7611 Paulsen Dr.                                    :
Eden Prairie, MN 55346                              :
                                                    :
and                                                 :
                                                    :
Jim Olsen as Friend and Next of Kin of             :    **CIVIL ACTION NO:_____**
Tanner Olsen                                        :
7611 Paulsen Dr.                                    :
Eden Prairie, MN 55346                              :
                                                    :
and                                                 :
                                                    :
Rylma Nink                                          :
408 Yorkshire                                       :
Pasadena, TX 77503                                  :
                                                    :
and                                                 :
                                                    :
Eugene Nink                                         :
408 Yorkshire                                       :
Pasadena, TX 77503                                  :
                                                    :
and                                                 :
                                                    :
Gloria Nink                                         :
5800 Woodway Dr.                                    :
Apt. #210                                           :
Houston, TX 77057                                   :
                                                    :
and                                                 :
                                                    :
Mary Nink                                           :
351 Oak Ridge Dr.                                   :
Cleveland, TX 77327                                 :

                                                :
and                                             :
                                                :
                                                :
Scott Pflug                                     :
7365 Bridle Curve                               :
Eden Prairie, MN 55346                          :
                                                :
and                                             :
                                                :
Patrick Scott Baker                             :
2450 NW 58th Street                             :
Seattle, WA 98107                               :
                                                :
                                                :
and                                             :
                                                :
Jerry Baker                                     :
1165 NW Baker Dr.                               :
White Salmon, WA 98672                          :
                                                :
and                                             :
                                                :
Lois Baker                                      :
1165 NW Baker Dr.                               :
White Salmon, WA 98672                          :
                                                :
and                                             :
                                                :
Craig Baker                                     :
1413 11th St.                                   :
Anacortes, WA 98221                             :
                                                :
                                                :
and                                             :
                                                :
Craig Baker as the Personal Representative  :
of the Estate of David Baker                :
1413 11th St.                                   :
Anacortes, WA 98221                             :
                                                :
and                                             :
                                                :
Stacie Baker                                    :
PO Box 127                                      :
Glenwood, WA 98619                              :
                                                :
and                                             :
                                                :

Patricia A. Henry, Individually, and      :
as the Substitute Executrix      :
and Successor in Interest of the Estate of      :
Scarlett Rogencamp, and as the Executrix      :
of the Estate of Hetty E. Peterson      :
900 Sagecrest Drive      :
Wenatchee, WA  98801      :
      :
and      :
      :
Valerie Peterson as the Executor      :
The Estate of Vernon W. Peterson      :
10121 Spinning Wheel Court      :
Fairfax, VA  22032      :
      :
and      :
      :
Katharine D. Doris      :
P.O. Box 1483      :
Friday Harbor, WA  98250      :
      :
and      :
      :
Paul G. Peterson      :
P.O. Box 612      :
Friday Harbor, WA 98250      :
      :
and      :
      :
Michelle Y. Holbrook      :
729 Vista View Place      :
East Wenatchee, WA 98802      :
      :
                Plaintiffs,      :
v.      :
      :
Great Socialist People's Libyan      :
     Arab Jamahiriya a/k/a LIBYA      :
Tripoli, LIBYA      :
      :
and      :
      :
Libyan Internal Security a/k/a      :
al-'Amn al-Dhakhili      :
Bab-al-Azizyeh      :
Assur Road      :

Tripoli, LIBYA                          :
                                        :
and                                     :
                                        :
Libyan External Security a/k/a          :
al-ʿAmn al-Khariji                      :
Bab-al-Azizyeh                          :
Assur Road                              :
Tripoli, LIBYA                          :
                                        :
and                                     :
                                        :
Mu'ammar al-Qadhdhafi                   :
Supreme Leader of the Great Socialist   :
People's Libyan Arab Jamahiriya         :
Tripoli, LIBYA                          :
                                        :
and                                     :
                                        :
Major Abdallah al-Sanusi                :
Chief, Libyan Internal Security         :
Bab-al-Azizyeh                          :
Assur Road                              :
Tripoli, LIBYA                          :
                                        :
and                                     :
                                        :
Ibrahaim al-Bishari
Chief, Libyan External Security         :
Bab-al-Azizyeh                          :
Assur Road                              :
Tripoli, LIBYA                          :
                                        :
and                                     :
                                        :
SYRIAN ARAB REPUBLIC                    :
Damascus, SYRIA                         :
                                        :
and                                     :
                                        :
Syrian Air Force Intelligence           :
Kafar Susa Roundabout                   :
Damascus, SYRIA                         :
                                        :
and                                     :
                                        :

4

General Muhammed Al Khuli                    :
Chief, Syrian Air Force Intelligence          :
Kafar Susa Roundabout                        :
Damascus, SYRIA                              :
                                             :
            Defendants.                      :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

### COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES

Plaintiffs bring this action as a related action pursuant to the provisions of the

newly enacted Defense Authorization Act for Fiscal Year 2008, Section 1083(c), Pub. L.

No. 110-181, §1083, 122 Stat. 3, 338-344 (2008) and 28 U.S.C. § 1602, *et seq.*

Plaintiffs, Jackie Nink Pflug, Jim Olsen, Tanner Olsen, Rylma Nink, Eugene

Nink, Gloria Nink, Mary Nink, Scott Pflug, Patrick Scott Baker, Jerry Baker, Lois Baker,

Craig Baker, Craig Baker as the Personal Representative of the Estate of David Baker,

Stacie Baker, Patricia A. Henry, Individually and as the Substitute Executrix and

Successor in Interest of the Estate of Scarlett Rogencamp, and as Executrix of the Estate

Hetty E. Peterson, Valerie Peterson as the Executor of the Estate of Vernon W. Peterson,

Patricia Katharine D. Doris, Paul G. Peterson, and Michelle Y. Holbrook bring this action

pursuant to the provisions of 28 U.S.C. § 1605A(c), seeking compensatory and punitive

damages for the personal injuries committed upon Jackie Nink Pflug, Patrick Scott Baker,

and Scarlett Rogencamp and for the injury and/or murder of to each of them, as

hereinafter set forth.

This action arises out of the hostage taking and injuries of Jackie Nink Pflug,

Patrick Scott Baker and the hostage taking, injuries and death of Scarlett Rogencamp

carried out as described below acting under the instruction and/or control of the

Defendants and/or utilizing the funding, aid and material support provided by the

Defendant governments of Libya and Syria, which each was a designated state sponsor of terrorism and others who support terrorism, and to which actions the Defendants rendered aid, material support and assistance. Plaintiffs state in support of their Complaint and allege as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction over the subject matter of this case arises under 28 U.S.C. § 1605A, 28 U.S.C. §§ 1330 (a), and 1331.

2.      Defendants Great Socialist People's Libyan Arab Jamahiriya (hereinafter "Libya"), al 'Amn-al Dhakhili (hereinafter "Libyan Internal Security Agency"), al-'Amn al Khariji (hereinafter "Libyan External Security Agency"),  Syrian Arab Republic (hereinafter "Syria"), and the Syrian Air Force Intelligence are subject to suit in the courts of the United States as sponsors of terrorism and of acts of terrorism committed by the Abu Nidal Organization's activities pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and related statutes.

3.      Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and related statutes .

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

5.      Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism acting by and through their officials, employees and agents within the meaning of 28 U.S.C. §1605A include causes of action arising out of

the federal counterterrorism statute(s), as committed during the time period when said foreign state was a designated state sponsor of terrorism.

## THE PARTIES

6.     Plaintiff Jackie Nink Pflug is currently a resident and citizen of the State of Minnesota. At the time of the acts alleged in this Complaint, and throughout her entire lifetime, Jackie Nink Pflug was an American Citizen. Jackie Nink Pflug was, at all pertinent times alleged herein, a victim of "torture" and "hostage taking" as defined in Torture Victims Protection Act (hereinafter "TVPA"), 28 U.S.C. § 1350. She suffered "personal injury" as the result of Defendants' actions and activities as defined in 28 U.S.C. § 1605A. Plaintiff Jackie Nink Pflug, can sue and be sued in this Court.

7.     Plaintiff Rylma Nink is a resident and citizen of the State of Texas. At all times relevant hereto, Rylma Nink was, and is, the mother of Plaintiff Jackie Nink Pflug. Plaintiff Rylma Nink can sue and be sued in this Court.

8.     Plaintiff Eugene Nink is a resident and citizen of the State of Texas. At all times relevant hereto, Eugene Nink was, and is, the father of Plaintiff Jackie Nink Pflug. Plaintiff Eugene Nink can sue and be sued in this Court.

9.     Plaintiff Jim Olsen is a resident and citizen of the State of Minnesota. On May 25, 1997, Plaintiff Jim Olsen married Plaintiff Jackie Nink Pflug and is currently her husband. Plaintiff Jim Olsen can sue and be sued in this Court.

10.    Plaintiff Tanner Olsen is a resident and citizen of the State of Texas. Plaintiff Tanner Olsen is the son of Plaintiff Jackie Nink Pflug and Plaintiff Jim Olsen, and was born August 6, 1997. Plaintiff Tanner Olsen can sue and be sued in this Court.

11.    Plaintiff Gloria Nink is a resident and citizen of the State of Texas. At all times relevant hereto, Gloria Nink was, and is, the sister of Plaintiff Jackie Nink Pflug. Plaintiff Gloria Nink can sue and be sued in this Court.

12.    Plaintiff Mary Nink is a resident and citizen of the State of Texas. At all times relevant hereto, Mary Nink was, and is, the sister of Plaintiff Jackie Nink Pflug. Plaintiff Mary Nink can sue and be sued in this Court.

13.    Plaintiff Scott Pflug is a resident and citizen of the State of Minnesota. At the time of the incident described herein, Plaintiff Scott Pflug was the husband of Plaintiff Jackie Nink Pflug. Plaintiff Scott Pflug and Plaintiff Jackie Nink Pflug were divorced in October 1988. Plaintiff Scott Pflug can sue and be sued in this Court.

14.    Plaintiff Patrick Scott Baker is currently a resident and citizen of the State of Washington. At the time of the acts alleged in this Complaint, and throughout his entire lifetime, Patrick Scott Baker was and is an American Citizen. Patrick Scott Baker was, at all pertinent times alleged herein, a victim of "torture" and "hostage taking" as defined in Section 3 of the TVPA of 1991 , 28 U.S.C. § 1350. He suffered "personal injury" as the result of Defendants' actions and activities as defined in 28 U.S.C. § 1605A. Plaintiff Patrick Baker can sue and be sued in this Court.

15.    Plaintiff Jerry Baker is a resident and citizen of the State of Washington. At all times relevant hereto, Jerry Baker was, and is, the father of Plaintiff Patrick Scott Baker. Plaintiff Jerry Baker can sue and be sued in this Court.

8

16.    Plaintiff Lois Baker is a resident and citizen of the State of Washington. At all times relevant hereto, Lois Baker was, and is, the mother of Plaintiff Patrick Scott Baker. Plaintiff Lois Baker can sue and be sued in this Court.

17.    Plaintiff Craig Baker is a resident and citizen of the State of Washington. At all times relevant hereto, Craig Baker was, and is, the brother of Plaintiff Patrick Scott Baker. Plaintiff Craig Baker can sue and be sued in this Court.

18.    Plaintiff Craig Baker is the Personal Representative for the Estate of David Baker, and brings this action in his capacity as such. David Baker died in the summer of 1991. At all times relevant hereto, David Baker was a brother of Plaintiff Patrick Scott Baker. Plaintiff Estate of David Baker can sue and be sued in this Court.

19.    Plaintiff Stacie Baker is a resident and citizen of the State of Washington. At all times relevant hereto, Stacie Baker was, and is, the sister of Plaintiff Patrick Scott Baker. Plaintiff Stacie Baker can sue and be sued in this Court.

20.    At the time of the acts alleged, Scarlett Rogencamp was, and throughout her lifetime, an American citizen.    Scarlett Rogencamp was, at all pertinent times alleged herein, a victim of "torture" and "hostage taking" as defined in Section 3 of the TVPA, 28 U.S.C. 1350.  She suffered "personal injury" as the result of Defendants' actions and activities as defined in 28 U.S.C. § 1605A.  Said Estate can sue, by and through the Executrix, or its successor, of Scarlett Rogencamp, and be sued in this Court.

21.    Plaintiff the Estate of Hetty E. Peterson is a State of Washington Estate. The Estate of Hetty E. Peterson is represented in this action through its Administrator, Patricia A. Henry. The Estate of Hetty E. Peterson can sue and be sued in this Court. In addition, before her death, Hetty E. Peterson was named Executrix of the Estate of Scarlett

Rogencamp in accordance with an Order of the Superior Court of California, County of
San Diego, North County Judicial District.  At all times relevant hereto, Hetty E. Peterson
was the mother of Plaintiff Scarlett Rogencamp.  At the time of her death, Scarlett
Rogencamp was a resident and citizen of California.  Under the terms of Scarlett
Rogencamp's will, which has been probated with the Superior Court of California,
County of San Diego, North County Judicial District, Mrs. Peterson was the sole
beneficiary of Scarlett Rogencamp's estate. Patricia A. Henry, Scarlett Rogencamp's
sister, now serves as the substitute Administrator of the Scarlett Rogencamp estate.

22.    Hetty E. Peterson wass the "successor in interest" to all causes of action that
otherwise would belong to the Estate of Scarlett Rogencamp and accordingly may
prosecute, in the successor's own name, all such causes of action.  California Code of
Civil Procedure, §§ 377.10, 377.11, 377.30, 377.31

23.    Plaintiff Valerie Peterson is the Executor of the Estate of Vernon W.
Peterson, and brings this action in her capacity as such.  Vernon W. Peterson died on
March 7, 1999.  At all times relevant hereto, Vernon W. Peterson was the father of
Plaintiff Scarlett Rogencamp.  Plaintiff Estate of Vernon W. Peterson can sue and be sued
in this Court.

24.    Plaintiff Patricia A. Henry is a resident and citizen of the State of
Washington.  At all times relevant hereto, Patricia A. Henry was, and is, the sister of
Scarlett Rogencamp.  Plaintiff Patricia A. Henry can sue and be sued in this Court.

25.    Plaintiff Katherine D. Doris is a resident and citizen of the State of
Washington.  At all times relevant hereto, Katherine D. Doris was, and is, the sister of
Scarlett Rogencamp.  Plaintiff Katherine D. Doris can sue and be sued in this Court.

26.    Plaintiff Paul G. Peterson is a resident and citizen of the State of Washington.  At all times relevant hereto, Paul G. Peterson was, and is, the brother of Scarlett Rogencamp.  Plaintiff Paul G. Peterson can sue and be sued in this Court.

27.    Plaintiff Michelle Y. Holbrook is a resident and citizen of the State of Washington.  At all times relevant hereto, Michelle Y. Holbrook was, and is, the sister of Scarlett Rogencamp.  Plaintiff Michelle Y. Holbrook can sue and be sued in this Court.

28.    Defendant Libya was a foreign state that had been designated a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) on December 29, 1979, and remained so designated until 2006; Libya was a designated state sponsor of terrorism during the time of the acts of terrorism described herein as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(I) and (II).  Libya at all times pertinent to this action, provided material support and resources to the terrorist organization ANO.  ANO, at all times pertinent to this action, operated, among other places, in Libya, Iraq, Lebanon, and Syria and carried out both military style operations and a campaign of terrorism.  This terrorist campaign has included, but not limited to, attacks in 20 countries, killing or injuring almost 900 persons.  Targets include the United States, the United Kingdom, France, Israel, moderate Palestinians, the PLO, Austria, Italy and various other countries.  Libya, through its actions is and/or has been a sponsor of Abu Nidal and ANOwithin the meaning of 28 U.S.C. § 1605A and Public Law 110-181, Section 1083, by providing it with funding, direction, aid, support and training for its terrorist activities.

29.    Defendant Syria is a foreign state that has been designated and remains designated as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration

11

Act of 1979 (50 U.S.C. App. § 2405(j)) and § 620(A) of the Foreign Assistance Act of

1961 (22 U.S.C. § 2371) since January 19, 1984 as required by 28 U.S.C. §

1605A(a)(2)(A)(i)(I) and (II). Syria at all times pertinent to this action, provided material

support and resources to the ANO. ANO, at all times pertinent to this action, operated,

among other places, in Libya, Iraq, Lebanon, Syria and carries out both military

operations and a campaign of terrorism. This terrorist campaign has included, but not

limited to, attacks in 20 countries, killing or injuring almost 900 persons. Targets include

the United States, the United Kingdom, France, Israel, moderate Palestinians, the PLO,

Austria, Italy and various other countries. Syria, through its actions is and/or has been a

sponsor of Abu Nidal, within the meaning of 28 U.S.C. § 1605A by providing it with

funding, aid, support, direction and/or training for its terrorist activities.

    30.    Defendant Libyan Internal Security ("LISO") is one of the Libyan

intelligence services through which Libya sponsored Abu Nidal, which caused the

terrorist acts described below.

    31.    Defendant Libyan External Security ("LESO") is one of the Libyan

intelligence services through which Libya sponsored Abu Nidal, which caused the

terrorist acts described below.

    32.    Defendant Mu'ammar al Qadhdhafi is the leader of Libya and performed

acts within the scope of his office, which caused the terrorist acts described below.

    33.    Defendant Major 'Abdallah al-Sanusi was the head of the Libyan Internal

Security Agency and performed acts within the scope of his office, which caused the

terrorist acts described below.

34.    Defendant Ibrahaim al-Bishari was the head of the Libyan External Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.

35.    Defendant Syrian Air Force Intelligence is the Syrian intelligence services through which Syria sponsored Abu Nidal, which caused the terrorist acts described below.

36.    Defendant General Muhammed al-Khuli was the chief of the Syrian Air Force Intelligence and performed acts within the scope of his office, which caused the terrorist acts described below.

37.    Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices, which caused the extrajudicial killing and personal injuries resulting from the act of terrorism described herein.  Accordingly, said defendants are jointly and severally liable to plaintiffs.

38.    Defendants Libya, and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari are directly, and pursuant to 28 U.S.C. § 1605A(c) and state law, vicariously responsible for the actions of their co-defendants because they sponsored the terrorist organization, ANO.  Accordingly, defendants are jointly and severally liable to plaintiffs for the acts complained herein.

## DEFENDANTS' SPONSORSHIP AND SUPPORT FOR
## THE ABU NIDAL ORGANIZATION

39.    The government of Libya and also separately the government of Syria

sponsored and supported the Abu Nidal Organization, a/k/a Black September, the Fatah

Revolutionary Council, the Arab Revolutionary Council, the Arab Revolutionary

Brigades, the Revolutionary Organization of Socialist Muslims, (hereinafter "ANO") a

known terrorist organization, headed by Sabri Al Bana, prior to and on November 23,

1985, the date of the hijacking of Egypt Air Flight 648.

40.    The substantial material support to and sponsorship of the ANO by the

government of Libya included, but not limited to, assisting and/or providing the

following:

        a.  funds,

        b.  facilities,

        c.  airline tickets,

        d.  free and unobstructed entry into, safe haven in, and exit from Libya by
            members of ANO,

        e.  terrorist training in Libyan camps,

        f.  use of the privilege of Libya's "diplomatic pouch",

        g.  use of Libya's diplomatic freight privileges,

        h.  official documents of all kinds, and

        i.  actual operational assistance in pre-positioning of people and supplies
            for the conduct of the hijacking of Flight 648.

41.    On two separate occasions shortly prior to the hijacking event, one or

more of the hijackers met in Athens with a Libyan government official regarding the

planned hijacking. In addition, without the support provided by and involvement of this Libyan official, this particular terrorist event would not have taken place.

42.    More specifically, in this particular instance the government of Libya supported this operation by, among other things:

     a.  providing at least some of the ANO hijackers with Tunisian passports, which allowed the hijackers to travel and

     b.  transporting to Athens by Libyan government representatives in its "diplomatic pouch" the weapons used by the ANO hijackers to pre-position the weapons in Athens for pick up at the Athens Airport by the ANO resident agent.

43.    The ANO resident agent then passed the weapons and other support material to the ANO "cut-out," who then passed the weapons and materials to an ANO leader, who then provided the weapons and support material to the ANO hijackers.

44.    Once the hijackers departed on the Egypt Air flight, the ANO cut-out and the ANO leader, both of whom had been brought to Greece for their particular task, left Greece.

45.    The sponsorship by the government of Syria included, among other things, the providing of training in Syrian sponsored ANO terrorist training camps, military and general intelligence, safe haven and free passage in and through Syrian controlled territory.

46.    Syria provided general material support to the ANO by providing ANO with funds, travel documents, training, aid, support and protection at several facilities, including those located in the Bekaa Valley, in or near Syria and Lebanon.  Syrian

military and government intelligence agents were present around the ANO terrorist training camp maintained in the Syrian controlled Bekaa Valley located in Lebanon.

47.     The Defense Intelligence Agency of the United States Department of Defense, and other intelligence agencies of the United States government, as well as the United States Department of State determined that the hijacking of the Egypt Air Flight 648 on November 23, 1985 was conducted by members of the terrorist organization known as the ANO, and that the organization and act were sponsored by (a) the government of Libya, which provided general and specific material support for ANO, thereby enabling ANO to commit this hijacking; and that the ANO was also sponsored by (b) the government of Syria, which provided general material support for ANO and its terrorist members

48.  The providing of material support for the ANO, a known terrorist organization, by the government of Libya and the government of Syria, acting directly and by and through their individual governmental representatives as named in the complaint, and by other representatives of the government, constitute violations of applicable and numerous United States laws, thereby rendering the government of Libya, and the government of Syria, and their individual governmental representatives named as defendants herein jointly and severally liable for their illegal acts and deeds.

## FACTUAL ALLEGATIONS

49. On or about November 13, 1985, an ANO operative, Omar Rezaq ("Rezaq"), traveled from Beirut to Athens, Greece, for the express purpose of participating in an ANO mission to hijack an airplane.

50.    On November 23, 1985, three (3) ANO operatives, one of whom was Rezaq, boarded Egypt Air Flight 648, having used illegal passports provided to them for the purpose of accomplishing the mission of hijacking the plane.

51.    On November 23, 1985, Egypt Air Flight 648 had taken off from Athens, Greece, and headed in a southeasterly direction towards Cairo, Egypt, its planned destination.

52.    On board was a typically multinational and multicultural mix of passengers, including, but not limited to, Egyptians, Greeks, Filipinos, Israelis and three (3) Americans.

53.    The three (3) Americans on Flight 648 were decedent Scarlett M. Rogenkamp, Plaintiff Jackie Pflug and Plaintiff Patrick Baker.

54.    Some minutes into the flight, terrorists from the ANO hijacked the plane, contrary to law, and placed the passengers in great danger and fear for their lives.  The hijackers used weapons provided by Libyan government agents which had been transported in Libyan diplomatic pouch(es).

56.  After a mid-flight shootout between an Egyptian Sky Marshall and one of the hijackers, which resulted in the death of a hijacker, the wounding of the Sky Marshall, and two stewardesses, as well as the piercing of the fuselage, Flight 648 was diverted to Malta.

57.    At first, the tower at Malta's International Airport refused to let Flight 648 land, but authorities relented after Captain Galal told them that the plane was in imminent danger of crashing into the sea because he was nearly out of fuel.

17

58.    Even so, the runway lights were still off and Galal, with a gun barrell at his head, had to rely on his plane's landing lights to pierce the darkness as he landed at Malta's International Airport, which placed the passengers in further great danger and fear for their lives.

59.    The tower ordered Flight 648 to taxi to a remote parking area; four police buses then blocked both ends of the runway.

60. The terrorists demanded that the airport authorities of Malta refuel the plane.

61. The airport authorities of Malta refused to comply with the terrorists' demands.

62. At that time, the terrorists threatened to shoot a passenger every fifteen minutes unless the Maltese agreed to refuel the plane.

63. The passengers had been instructed to surrender their passports and were separated by country with Americans and Israeli's placed in First Class.

64. Meanwhile, in a response to an appeal from the pilot, the terrorists agreed to release eleven women; seven Filipinos and four Egyptians.

65. Thereafter, the terrorists asked for the two Israeli women to identify themselves.

66. Thinking that she too would be released, Tamar Artzi rose from her seat and went to the front of the aircraft. At that time, one of the terrorists aimed his pistol at her head and pulled the trigger. Thinking that Ms. Artzi was dead or mortally wounded, the terrorists threw her out of the plane and onto the tarmac.

67. At this point, it being abundantly clear to the remaining passengers, including plaintiffs Scarlett Rogencamp, Jackie Nink Pflug and Scott Patrick Baker, the terrorists

were not just going to let everyone go, but that they intended to kill people and to kill them.

68. Having just witnessed her friend being shot, Nitzan Mendelson, the second and last Israeli citizen on the plane, did not identify herself. Unfortunately, the terrorists were able to identify her from her passport photo.

69. With her hands tied, Nitzan Mendelson was dragged to the open doorway, where she was shot in the head and thrown onto the runway.

70. Ms. Mendelson never regained consciousness and was pronounced dead three days later. Ms. Artzi miraculously recovered from her injuries.

71. Next on the terrorists agenda were the three American passengers.

72. One by one, each of the Americans were brought to the front of the plane where they were shot in the head and thrown out of the plane onto the tarmac.

73. Patrick Scott Baker was the first American to be shot and thrown from the plane onto the tarmac. While he was injured and laying on the tarmac, the hijackers actually carried Patrick back up the stairs only to shoot him again and throw him off of the plane again; hoping this time to insure his death. This time Patrick pretended to be dead, and waited for the terrorists to go back inside the plane. At all times, Patrick was in fear for his life and suffered great pain and mental anguish. Patrick survived the assault, battery, shooting, wounding and maiming which he suffered, but has been forced to live with the experience of having been shot in the head, and having been forced to experience the hijacking and to watch as the two Israeli women were shot in the head, knowing he would be next.

74. During this entire time, Scarlett Rogenkamp and Jackie Pflug remained in their seats, knowing that they were the next targets of the terrorists. Each was in great danger and in fear for their lives.

75. The terrorists next called for Scarlett Rogencamp. Scarlett, like the three prior victims, was shot in the head and tossed from the plane. Scarlett was later pronounced dead

76. Lastly, Jackie Pflug, who had been forced to watch the slaying and maiming of the two Israeli and other two American passengers, and knowing that she was the next to be killed was brought to the front of the plane, where she, too, was brutally and mercilessly shot in the head and thrown from the plane onto the tarmac.

77. While Jackie's injuries were not fatal, they were severe and permanent. Jackie suffers from brain injuries as a direct and proximate result of her having been shot by the terrorists.

78. Each time the leader of the terrorists shot a passenger, he danced and sang and made jokes to his comrades. This joyful dancing while the terrorist murdered and maimed the Israeli and American passengers was witnessed by each passenger as he and she awaited their own fate, in fear for their lives.

79. Egyptian commandos subsequently stormed the plane in an attempt to rescue the passengers twenty-four hours after the hijacking began, while the aircraft was still on the ground in Malta.

80. Unfortunately, in the rescue attempt, 57 other passengers died.

81. During the course of the commando rescue attempt, Rezaq, the leader of the terrorist hijacking, and the gunman that the Plaintiffs believe shot Patrick Baker, Scarlett

Rogencamp, Jackie Pflug and the Israeli women, escaped, but was later captured by the authorities of Malta. Rezaq was convicted and charged with a number of crimes. He served seven years in a jail in Malta, but was then released.

82. In July 1993, special agents of the Federal Bureau of Investigation in Nigeria arrested Rezaq.

83. Rezaq was tried and convicted in the United States on one count of air piracy. Rezaq is currently serving a life sentence in a federal penal institution near Denver, Colorado

84. The United States Department of State, Office of the Historian, Bureau of Public Affairs, in its report of Significant Terrorist Incidents, 1961- 2001, lists the Egyptian Airliner Hijacking of November 23, 1985 as a terrorist act that was conducted by the Abu Nidal Group

85. Background Information on Foreign Terrorist Organizations, released by the Office of Counterterrorism, of the United States Department of State, indicates that the ANO has received considerable support, including safe haven, training, logistic assistance, and/or financial aid from the States of Libya and Syria, each being a Defendant herein.

86. The instances of physical violence inflicted upon Patrick Scott Baker, Scarlett Rogencamp and Jackie Nink Pflug were undertaken intentionally upon them for the purpose of furthering the terrorist objectives of Abu Nidal and the governments of Libya and Syria, and such acts therefore constitute "torture" as defined in the TVPA.

## COUNT  I - 28 U.S.C. §1605A(c)

### (All Plaintiffs)

87. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

88. On November 23, 1985, members of the ANO, sponsored by Libya, Syria, their agencies and leaders, willfully, violently and forcefully committed terrorist acts on board Egypt Air Flt 648 with the express purpose of inflicting personal injury, severe pain and suffering, death, and severe emotional injuries upon the Plaintiffs.

89. In addition, the acts of assaulting, terrorizing and holding Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp captive and each and all of the acts set forth above, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress, including solatium, upon members of their families.  Further these acts were undertaken for the purpose of causing severe mental duress and suffering, including solatium damages, upon the members of their families.

90. The willful, wrongful and intentional acts of the Abu Nidal terrorists were sponsored and directed by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, and Libyan Internal Security Agency.

91. Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices which sponsored the ANO 's terrorist activities, including but, not limited to the Egypt Air Highjacking.

92. As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored and directed by Libya and Syria, as

22

well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan

Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major

Abdallah al-Sanusi, and Ibrahaim al-Bishari, Plaintiffs Jackie Nink Pflug, Patrick Baker

and Scarlett Rogencamp were injured and/or killed and they and/or their families endured

extreme mental anguish, physical injury and pain and suffering, all to their damage.

WHEREFORE, Plaintiffs, and each of them, on behalf of Jackie Nink Pflug,

Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp, and their families

demand that judgment be entered, jointly and severally, against Defendants for the

damages they suffered, including, but not limited to wrongful death, pain, suffering,

mental anguish, and pecuniary losses, in the amount of ONE HUNDRED MILLION

($100,000,000.00) US Dollars for each of them, on this Count I, and their costs

expended; as to each of their, mothers, father, sisters, brothers, daughters, spouses and

sons above named,in the amount of  TEN MILLION DOLLARS ($10,000,000.00) for

each and every one of them, on this Count I, and for their costs expended and attorneys'

fees incurred.

## COUNT  II – BATTERY
### (Under 28 U.S.C. §1605A(c))

(Jackie Nink Pflug, Patrick Scott Baker, and Estate of Hetty Peterson, by and through its
Administrator, Patricia Henry, as the Sole Beneficiary and Successor in Interest of the
Estate of Scarlett Rogencamp)

93. Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in all the foregoing paragraphs as if fully set forth herein.

94. On November 23, 1985, members of Abu Nidal willfully, violently and

forcefully seized and hijacked Egypt Air Flight 648.  Jackie Nink Pflug, Patrick Baker

and Scarlett Rogencamp were passengers on said flight and were accordingly seized and

abducted against their will. The willful, wrongful and intentional acts of Abu Nidal were

sponsored by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan

External Security Agency, and Libyan Internal Security Agency constituted a battery

upon the person(s) of Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp causing

injury to them as set forth above.

95. Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major

Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their

offices which sponsored Abu Nidal's terrorist activities, including but, not limited to the

highjacking of Egypt Air Flight 648.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of Jackie Nink Pflug,

Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp, demand that

judgment be entered, jointly and severally, against the Defendants jointly and severally in

the amount of **FIFTY MILLION ($50,000,000.00) US Dollars** for each of them on this

Count II, and their costs expended.

### COUNT III – ASSAULT
### (Under 28 U.S.C. §1605A(c))

(Jackie Nink Pflug, Patrick Scott Baker, Estate of Hetty Peterson, by and through its
Administrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the
Estate of Scarlett Rogencamp)

96. Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in paragraphs in all the forgoing paragraphs as if fully set forth

herein.

97. During the time Jackie Nink Pfug, Patrick Baker and Scarlett Rogencamp

were held as hostages by Abu Nidal, their captors intentionally and willfully put them in

fear for their lives and apprehension of harm and injury as a direct result of their constant threats to harm or kill them, and the physical and mental abuse they inflicted upon them.

98. As a direct and proximate result of the willful, wrongful and intentional acts of Abu Nidal members, whose acts were sponsored by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari; Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs, on behalf of Jackie Nink Pflug, Patrick Baker and on behalf of the estate and heirs of Scarlett Rogencamp, demand that judgment be entered, jointly and severally, against the Defendants jointly and severally in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** for each of them, on this Count III, and their costs expended.

### COUNT IV – FALSE IMPRISONMENT
### (Under 28 U.S.C. §1605A(c))

(Jackie Nink Pflug, Patrick Scott Baker, Estate of Hetty Peterson, by and through it Administrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp)

99. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all of the foregoing paragraphs as if fully set forth herein.

100.    During the time that Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp and were held in captivity by ANO, they were deprived of their liberty and had no means of escape.

101.    As a direct and proximate result of the willful, wrongful and intentional acts of Abu Nidal members, whose acts were  sponsored by Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari; Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp were deprived of their freedom and liberty and injured in that they endured extreme mental anguish and pain and suffering, and each was subjected to intense physical injury, pain, discomfort and inconvenience and loss of their freedoms and liberty.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of Jackie Nink Pflug, Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp, demands that judgment be entered, jointly and severally, against the Defendants jointly and severally in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** for each of them on this Count IV, and their costs expended.

**COUNT V – INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM
(Under 28 U.S.C. §1605A(c))**

(As to All Plaintiffs)

102.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all of the forgoing paragraphs as if fully set forth.

103.    The acts of abducting and holding Jackie Nink Pflug, Patrick Baker, and Scarlett Rogencamp captive and each and all of the acts set forth above, including, but not limited to, the holding of each Plaintiff hostage while they witnessed the shooting in the head of other passengers, calling each one up to receive their own bullet into their

heads, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress, including solatium, pain, suffering and malicious killing and wounding upon each of the hostage victims and upon members of their families. Further, these acts were undertaken for the purpose of causing mental duress and suffering, including solatium, upon the members of their families.

104.    As a direct result and proximate result of the willful, wrongful and intentional acts of Abu Nidal, whose acts were sponsored by Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari; Jackie Nink Pflug,  Patrick Baker, Scarlett Rogencamp and their families, as above set forth, were each caused to suffer severe emotional distress.

**WHEREFOR**E, Plaintiffs, and each of them, on behalf of Jackie Nink Pflug, Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp, demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED MILLION ($100,000,000.00)** US Dollars for each of them, and their costs expended; as to each of their, mothers, father, sisters, brothers, daughters, spouses and sons above named, above in the amount of **TEN MILLION DOLLARS ($10,000,000.00)** for each and every one of them; and their costs expended.

### COUNT VI – ACTION FOR WRONGFUL DEATH
### (Under 28 U.S.C. §1605A(c))

(Estate of Hetty Peterson, sole beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp, by and through its substitute Administrator, Patricia A. Henry)

105.    Plaintiff, the Estate of Hetty Peterson, by and through its Adminstrator, Patricia A. Henry, and as the sole beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

106.    Scarlett Rogencamp's death was caused by a willful and deliberate act of extra judicial killing as she was shot in the head by members of the ANO during the course of their terrorist act of murder against her, as on American citizens, acting under the sponsorship of defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

**WHEREFORE,** Plaintiff the Estate of Hetty Peterson, by and through its Administrator, Patricia A. Henry, as the sole beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** on this Count VI, and their costs expended.

### COUNT VII– ACTION FOR SURVIVAL DAMAGES
### (Under 28 U.S.C. §1605A(c))

(Estate of Hetty Peterson, by and through its Administrator Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp)

107.    Plaintiff, the Estate of Hetty Peterson, by and through its Adminstrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

108.    Before her death, Scarlett Rogencamp suffered extreme bodily pain and mental anguish and suffering, entitling her estate to compensatory damages.

109.    Defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari  are directly and/or vicariously responsible for the actions of their co-defendants because they  acted as sponsors of the Abu Nidal Organization.

**WHEREFORE,** Plaintiff the Estate of Hetty E. Peterson, by and through its Administrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** on this Count VII, and their costs expended.

## COUNT VIII – ACTION FOR CIVIL CONSPIRACY
### (Under 28 U.S.C. §1605A(c))

(Patrick Scott Baker, Estate of Hetty Peterson, by and through its Administrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp and Jackie Nink Pflug)

110.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

111.    Defendants Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari did knowingly and willfully conspire with and/or agree to sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605A, which terrorist organization

29

willfully and deliberately committed an act of terrorism, which caused the injuries, and/or

death of Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp.

112.    For the reasons stated above, and having conspired to sponsor the terrorist

organization which willfully and deliberately committed an act of terrorism which caused

the injuries and/or death of Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp all

defendants are jointly and severally liable to plaintiff for all damages in this civil action.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of on behalf of Jackie Nink

Pflug, Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp, demand

that judgment be entered, jointly and severally, against Defendants in the amount of **ONE**

**HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS** for each of them, and

costs expended.

**COUNT IX – ACTION FOR AIDING AND ABETTING**
**(Under 28 U.S.C. §1605A(c))**

(Patrick Scott Baker, Estate of Hetty Peterson, by and through its Administrator, Patricia
A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett
Rogencamp and Jackie Nink Pflug)

113.    Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in each of the foregoing paragraphs as if fully set forth.

114.    Defendants Libya and Syria as well as the Syrian Air Force Intelligence,

the Libyan External Security Agency, Libyan Internal Security Agency, General

Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim

al-Bishari did knowingly and willfully provide substantial assistance, material support,

resources and sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605A,

which terrorist organization willfully and deliberately committed an act of terrorism,

which caused the injuries, and/or death of Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp.

115.    For the reasons stated above, and having aided and abetted a terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of Jackie Nink Pflug, Patrick Baker and Scarlett Rogencamp all defendants are jointly and severally liable to plaintiffs for all damages in this civil action.

**WHEREFORE**, Plaintiffs, and each of them, on behalf of Jackie Nink Pflug, Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp, and their families, demand that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS** for each of them, and costs expended.

## COUNT X ECONOMIC DAMAGES
### (Under 28 U.S.C. §1605A(c))

(Patrick Scott Baker, Estate of Hetty Peterson, by and through its Administrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp and Jackie Nink Pflug)

116.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

117.    As a direct and proximate result of the willful, wrongful, intentional, outrageous, reckless and illegal acts of Abu Nidal members, whose acts were sponsored by Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari; Jackie Nink Pflug, Patrick Baker, Scarlett Rogencamp each incurred economic damages in that

they were deprived of employment and economic opportunities while held hostage, and

deprived of future employment and economic opportunities after their release.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of on behalf of Jackie

Nink Pflug, Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp,

demand that judgment be entered, jointly and severally, against Defendants in the amount

of **THIRTY MILLION ($30,000,000.00) DOLLARS** for each of them, and costs

expended.

### COUNT XI – PUNITIVE DAMAGES
### (Under 28 U.S.C. § 1605A(c))

(As to All Plaintiffs)

118.    Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in each of the foregoing paragraphs as if fully set forth.

119.    The actions of Abu Nidal, as above set forth, were intentional and

malicious and in willful, wanton and reckless disregard of Jackie Nink Pflug's Patrick

Baker's, Scarlett Rogencamp's rights and physical well being. All of the acts of Abu

Nidal were facilitated by funding, training, support and sponsorship by Libya and Syria,

as well as the Syrian Air Force Intelligence, the Libyan External Security Agency,

Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-

Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.

120.    In providing such sponsorship, Libya, Syria, LESO, LISO, Syrian Air

Force Intelligence, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major

Abdallah al-Sanusi, Ibrahaim al-Bishari rendered material support to those actually

carrying out the acts above described. The Plaintiffs are entitled to an award of punitive

32

damages and same is hereby requested against the defendants , jointly and severally, in accordance with the provisions 28 U.S.C. 1605A(c)

  121. As required by 28 U.S.C. §1605A(c), General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari were acting within the scope of their duties when they supplied, facilitated or authorized the provision of material support to the ANO and the execution of the hijacking of Flight 648, and accordingly Libya and Syria are vicariously liable for the acts of these officials, employees and/or agents.

  **WHEREFORE,** Plaintiffs, and each of them, on behalf of on behalf of Jackie Nink Pflug, Patrick Baker and behalf of the estate and heirs of Scarlett Rogencamp, and their families, demand that judgment be entered for each of them, jointly and severally, against the Defendants in the amount of **ONE BILLION US DOLLARS ($1,000,000,000.00)** for each of them, and their costs expended.

  The award of punitive damages, as requested, is to punish Libya, Syria, LESO, LISO, Syrian Air Force Intelligence, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari for their conduct in supporting terrorism and the terrorist murderous acts described herein, and to send a message to them and others that the United States of America and its citizens responds to terror and murder with the application of orderly justice.

## ADDITIONAL RELIEF REQUESTED

  Plaintiffs request leave of Court to amend this Complaint as the interests of justice require.

Dated:  March 24, 2008

Respectfully Submitted,

HEIDEMAN NUDELMAN
  & KALIK, P.C.
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone:  202-463-1818
Telefax:     202-463-2999

By:_____

Richard D. Heideman (No. 377462)
Noel J. Nudelman (No. 449969)
Tracy Reichman Kalik (No. 462055)

PERLES LAW FIRM, P.C
Steven R. Perles (No. 326975)
Edward MacAllister
1146 19th Street, NW 5th Floor
Washington, DC  20036
Telephone:  202-955-9055
Telefax:  202-955-3806

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jackie Nink Pflug, et al. | Great Socialist People's Libyan Arab Jamahiriya, a/k/a LIBYA, et al. |

86655

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard D. Heideman
Heideman Nudelman & Kalik, P.C.
1146 19th Street, N.W., 5th Fl.
Washington, DC 20036
262-463-1818

Case: 1:08-cv-00505
Assigned To : Kessler, Gladys
Assign. Date : 3/24/2008
Description: PI/Malpractice

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

◉ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. _Habeas Corpus/ 2255_** | ○ **H. _Employment Discrimination_** | ○ **I. _FOIA/PRIVACY ACT_** | ○ **J. _Student Loan_** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)**<br><br>**\*(If pro se, select this deck)\*** | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions (if Privacy Act)**<br><br>**\*(If pro se, select this deck)\*** | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K. _Labor/ERISA (non-employment)_** | ○ **L. _Other Civil Rights (non-employment)_** | ○ **M. _Contract_** | ○ **N. _Three-Judge Court_** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ **1 Original Proceeding**    ○ **2 Removed from State Court**    ○ **3 Remanded from Appellate Court**    ○ **4 Reinstated or Reopened**    ○ **5 Transferred from another district (specify)**    ○ **6 Multi district Litigation**    ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Plaintiff's bring this action pursuant to 28 U.S.C. 1605A(C) for personal injury damages and punitive damages.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** ¦In excess of 1,000,000,000¦ **JURY DEMAND:** | Check YES only if demanded in complaint<br>**YES** ☐    **NO** ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | **YES** ☒    **NO** ☐    If yes, please complete related case form. |
|---|---|---|

**DATE** 3/24/2008        **SIGNATURE OF ATTORNEY OF RECORD** _Richard D. Heideman_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    **I.**       COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    **III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    **IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    **VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    **VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.