## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
PATRICK SCOTT BAKER, *et al.*,                    )
                                                  )
            *Plaintiffs*,                         )
                                                  )
    v.                                            )          Civil Action No. 03-749 (GK)
                                                  )
GREAT SOCIALIST PEOPLE'S LIBYAN                    )
ARAB JAMAHIRIYA, *et al.*,                         )
                                                  )
            *Defendants*.                          )
———————————————————————— )
JACKIE NINK PFLUG, *et al.*,                       )
                                                  )
            *Plaintiffs*,                         )
                                                  )
    v.                                            )          Civil Action No. 08-505 (GK)
                                                  )
GREAT SOCIALIST PEOPLE'S LIBYAN                    )
ARAB JAMAHIRIYA, *et al.*,                         )
                                                  )
            *Defendants*.                          )
———————————————————————— )

## THE LIBYAN STATE DEFENDANTS'
## MOTION TO DISMISS DUPLICATIVE COMPLAINT

Defendants Great Socialist People's Libyan Arab Jamahiriya, the Libyan Internal Security Organization, and the Libyan External Security Organization (collectively the "Libyan State Defendants") respectfully move this Court, pursuant to the Court's Order of June 18, 2008, for an order dismissing either the Second Amended Complaint in *Baker v. Great Socialist People's Libyan Arab Jamahiriya*, No. 1:03-cv-00749 (filed Mar. 25, 2003) or the Complaint in *Pflug v. Great Socialist People's Libyan Arab Jamahiriya*, No. 1:08-cv-00505 (filed Mar. 24, 2008), at Plaintiffs' election.

In support of their motion, the Libyan State Defendants respectfully submit the accompanying memorandum of points and authorities.

Dated: July 15, 2008                    Respectfully submitted,

                                        **WHITE & CASE** LLP

                                        / s / Christopher M. Curran
                                        Christopher M. Curran (D.C. Bar No. 408561)
                                        Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
                                        Nicole E. Erb (D.C. Bar No. 466620)
                                        701 Thirteenth Street, N.W.
                                        Washington, D.C. 20005
                                        Telephone: (202) 626-3600
                                        Facsimile: (202) 639-9355

                                        *Counsel for Great Socialist People's*
                                        *Libyan Arab Jamahiriya, the Libyan Internal*
                                        *Security Organization, and the Libyan External*
                                        *Security Organization*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

PATRICK SCOTT BAKER, *et al*.,                    )
                                                  )
        *Plaintiffs*,                       )
                                                  )
    v.                                            )          Civil Action No. 03-749 (GK)
                                                  )
GREAT SOCIALIST PEOPLE'S LIBYAN                   )
ARAB JAMAHIRIYA, *et al.*,                        )
                                                  )
        *Defendants*.                       )
_____)
JACKIE NINK PFLUG, *et al.*,                      )
                                                  )
        *Plaintiffs*,                       )
                                                  )
    v.                                            )          Civil Action No. 08-505 (GK)
                                                  )
GREAT SOCIALIST PEOPLE'S LIBYAN                   )
ARAB JAMAHIRIYA, *et al.*,                        )
                                                  )
        *Defendants*.                       )
_____)

## MEMORANDUM IN SUPPORT OF THE LIBYAN STATE
## DEFENDANTS' MOTION TO DISMISS DUPLICATIVE COMPLAINT

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C.  20005-3807
Tel:  (202) 626-3600
Fax:  (202) 639-9355

*Counsel for Defendants Great Socialist
People's Libyan Arab Jamahiriya, the
Libyan Internal Security Organization, and
the Libyan External Security Organization*

Pursuant to the Court's Order dated June 18, 2008 (Dkt. No. 90) authorizing the Libyan Defendants to file a motion to dismiss focused solely on whether these actions are duplicative (while reserving any and all other rights, immunities and defenses), Defendants Great Socialist People's Libyan Arab Jamahiriya, the Libyan External Security Organization and the Libyan Internal Security Organization (the "Libyan State Defendants") hereby submit that the *Baker* and *Pflug* actions are wholly duplicative of one another, and respectfully move the Court to dismiss one or the other at Plaintiffs' election.

## **BACKGROUND**

On March 25, 2003, Plaintiffs filed the *Baker* action on behalf of twenty-one plaintiffs. *Baker* alleges that the Defendants (including the Libyan State Defendants) provided material support to those responsible for the November 1985 hijacking of Egypt Air Flight 648 in Malta. Following the January 2008 amendments to the Foreign Sovereign Immunities Act, Plaintiffs sought leave to amend their *Baker* complaint to add new claims under those new amendments. Specifically, Plaintiffs represented that they "file[d] this Motion for Leave to file a Second Amended Complaint, such that the Court may then deem this action to be given the effect [as] 'if it had originally been filed under section 1605A(c).'" Exhibit A at 8-9 (Pls.' Mot. for Leave to Amend). This Court granted Plaintiffs leave to amend the *Baker* complaint on February 29, 2008.

The new *Baker* complaint (the Second Amended Complaint) sets forth eleven counts: a claim under 28 U.S.C. § 1605A(c) (Count I); state law tort claims of battery, assault, false imprisonment, intentional infliction of emotional distress, wrongful death, survival, civil conspiracy and aiding and abetting (Counts II-IX); and state law damages claims for "economic damages" and punitive damages (Counts X-XI). On March 17, 2008, this Court ordered the

Libyan Defendants to respond to the Second Amended Complaint by April 30, 2008. The Libyan Defendants filed their respective motions to dismiss the Second Amended Complaint pursuant to that Order.

On March 24, 2008, nearly one month *after* the Court granted Plaintiffs' motion to amend their *Baker* complaint, Plaintiffs filed the *Pflug* action. The *Pflug* complaint is virtually identical to the *Baker* Second Amended Complaint: the same twenty-one Plaintiffs are suing the same Defendants, and Plaintiffs set forth the same eleven counts — in exactly the same order — arising from the same events. *Compare Baker* Second Am. Compl. (Dkt. No. 66) (setting forth allegations and counts identified above) *with Pflug* Complaint (identifying parties and alleging same claims as alleged in *Baker*). Indeed, Plaintiffs' counsel admitted during the May 15, 2008 status conference in *Baker* that the two actions are identical:

> That is correct, Your Honor. Both cases do include exactly the same parties. The second case is styled *Pflug* rather than *Baker* for easy distinction. ***Otherwise, it is exactly the same.***

Exhibit B at 7 (Hr'g Tr. 7:6-9, May 15, 2008) (emphasis added). The only difference that Plaintiffs have subsequently identified is that *Baker*, as an action filed prior to the recent FSIA amendments, alleges jurisdiction in the alternative under the old — and now stricken — FSIA terrorism exception to sovereign immunity, 28 U.S.C. § 1605(a)(7), as well as the new one, 28 U.S.C. § 1605A. *See, e.g.*, *Baker* Second Am. Compl. ¶¶ 1-4 (alleging jurisdictional basis for claims).

Plaintiffs' only stated basis for maintaining both actions is their desire for insurance against dismissal of one of the lawsuits: "We just need to be sure that if somehow or another something were to happen to one, the clients would not lose their rights to still be fully and

properly before the [C]ourt." Exhibit B at 9 (Hr'g Tr. 9:13-16, May 15, 2008); *see also* Exhibit C (Joint Praecipe 4-6).

## **ARGUMENT**

A "plaintiff has 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Accordingly, courts routinely exercise their discretion to dismiss duplicative claims and lawsuits. *See, e.g.*, *Zerilli*, 628 F.2d at 222 (affirming dismissal of duplicative claim); *Mendlow v. Library of Cong.*, No. 98-5165, 1999 WL 187762, at *1 (D.C. Cir. Feb. 17, 1999) (affirming *sua sponte* dismissal of claim on the alternative grounds that it was duplicative of a lawsuit pending in another federal court); *Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (affirming dismissal of duplicative action); *Rizzo v. County of DuPage*, No. 05 C 4872, 2006 WL 539346, at *3 (N.D. Ill. March 1, 2006) (dismissing duplicative counts in complaint *sua sponte*); *Nutrasweet Co. v. X-L Eng'g Corp.*, 926 F. Supp. 767 (N.D. Ill. 1996) (dismissing duplicative count *sua sponte*).

Indeed, the D.C. Circuit has endorsed the dismissal of wholly duplicative claims. In *Zerilli*, the plaintiffs brought two identical sets of claims against certain public officials, among others, for alleged violations of the plaintiffs' constitutional rights. *Zerilli*, 628 F.2d at 218. The district court dismissed the new claims because the plaintiffs already had asserted the same claims against the defendants in a pending lawsuit. *Id*. at 222. The D.C. Circuit affirmed, holding that a plaintiff is not entitled to maintain duplicative claims against the same defendant. *Id*. ("Judge Gasch did not err in dismissing this claim, for a plaintiff has 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and

against the same defendant.'") (quoting *Walton*, 563 F.2d at 70).

Similarly, in *Mendlow*, the D.C. Circuit rejected the district court's basis for dismissal but affirmed the dismissal anyway on the basis that the claims were duplicative. The district court had dismissed the action *sua sponte* for failure to prosecute without first notifying the plaintiff that dismissal was imminent. *Mendlow*, 1999 WL 187762, at *1. When the plaintiff appealed the dismissal, the D.C. Circuit agreed that the district court should have given the plaintiff notice before dismissing the suit for failure to prosecute, but it affirmed the judgment of dismissal because "[a]ppellant's complaint raises identical claims as those asserted by appellant in [an earlier case]." *Id.* As the D.C. Circuit stated, "[a]n action may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Id.* (citation omitted).

The Complaint in *Pflug* asserts the same claims as does as the *Baker* Second Amended Complaint. Just as in *Zerilli* and *Mendlow*, "reasons of wise judicial administration" warrant dismissal of one of Plaintiffs' duplicative actions. *See Adams*, 487 F.3d at 692 ("Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'") (citation omitted).

Moreover, Plaintiffs may not maintain duplicative actions in order to gain a procedural advantage over the Libyan State Defendants. A plaintiff cannot expand the litigation rights it would have enjoyed in one lawsuit by maintaining a duplicative lawsuit against the same defendant. *See Coles v. Penny*, 531 F.2d 609, 613-14 (D.C. Cir. 1976) ("Once having failed to comply with [the applicable filing deadline], plaintiff may not circumvent it by filing another complaint containing virtually identical allegations . . . otherwise, finality would never be

attainable."); *Walton*, 563 F.2d at 71; *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 216 (E.D.N.Y. 1999) (granting summary judgment in part because the plaintiffs filed a duplicative action to avoid an adverse ruling regarding the amendment of their complaint). If the Court rules against Plaintiffs, the rules of civil procedure and appellate procedure provide various options for losing parties, such as an appeal. The procedures set forth in the applicable rules are all of the procedures to which Plaintiffs are entitled. The Court should not expand Plaintiffs' remedies by allowing them to maintain a duplicative action. *Walton*, 563 F.2d at 71. In short, as the authorities in this Circuit and elsewhere counsel, Plaintiffs should be limited to a single lawsuit against the Libyan State Defendants in which they assert their claims arising from the facts alleged in *Baker* and *Pflug*. *Zerilli*, 628 F.2d at 222; *Mendlow*, 1999 WL 187762, at *1.

Finally, the D.C. Circuit recently issued a comprehensive and authoritative decision addressing the operation of the new statute. *See Simon v. Republic of Iraq*, --- F.3d ----, No. 06-7175, 2008 WL 2497417 (D.C. Cir. June 24, 2008) (interpreting Section 1605A). Thus, Plaintiffs cannot reasonably rely upon any uncertainty as to the proper interpretation of Section 1605A as a basis for maintaining both duplicative actions.

In order to avoid any possible prejudice or unfairness to Plaintiffs, the Libyan State Defendants suggest that the Court permit Plaintiffs to choose which of the two actions may go forward. Plaintiffs may choose to proceed with *Baker* (as amended) or with *Pflug*. But Plaintiffs should not be permitted to proceed with both duplicative actions, and the Libyan State Defendants — and the Court — should not be burdened with both duplicative actions.

## <u>CONCLUSION</u>

For the foregoing reasons, the Libyan State Defendants respectfully move the Court to dismiss either the *Baker* or *Pflug* action — at Plaintiffs' election — because the actions are wholly duplicative of one another.

**WHITE & CASE** LLP

/ s / Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb (D.C. Bar No. 466620)
Charles C. Moore (D.C. Bar No. 472593)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Defendants Great Socialist People's Libyan Arab Jamahiriya, the Libyan Internal Security Organization, and the Libyan External Security Organization*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2008, a copy of the foregoing The Libyan State Defendants' Motion to Dismiss Duplicative Complaint, Memorandum In Support Of the Libyan State Defendants' Motion To Dismiss Duplicative Complaint, and Proposed Order were served upon the following parties via the Electronic Case Filing ("ECF") system:

Richard D. Heideman
Heideman Nudelman & Kalik, PC
1146 19th Street, N.W., Fifth Floor
Washington, DC  20036

Steven R. Perles
The Perles Law Firm, PC
1146 19th Street, N.W., Fifth Floor
Washington, DC  20036

*Counsel for Plaintiffs*

<u>/s/ Charles C. Moore</u>

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Patrick Scott Baker, et al. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Case Number 03-cv-0749 (GK) |
| Socialist People's Libyan Arab | : | |
| Jamahirya, et al. | : | |
| | : | |
| Defendants. | : | |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . | : | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED
COMPLAINT PURSUANT TO THE ENACTMENT OF AND IN COMPLIANCE
WITH PUB. LAW. 110-181, SECTION 1083(c) AND MEMORANDUM IN
SUPPORT THEREOF**

COME NOW the Plaintiffs, by and through Counsel, and hereby move this Court

for Leave to File a Second Amended Complaint Pursuant to the Enactment of, and in

Compliance with, the Defense Authorization Act for Fiscal Year 2008, Section 1083(c).

Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-344 (2008).  Plaintiffs state the following

in support thereof:

1.       This action was commenced on March 25, 2003 by the Plaintiffs.

2.       The Court entered default against the Syrian Defendants on October 16,

2003.

3.       As to the Libyan Defendants, various proceedings have occurred,

including (a) an appeal which has resulted in the issuance of a mandate and the

transfer of this case back from the United States Court of Appeals for the District

of Columbia Circuit to this Court, and (b) the recent enactment of legislation

which impacts (i) certain prior rulings of the court and (ii) legal entitlements of the Plaintiffs, as will be more fully set forth hereinafter.

4.   On May 12, 2004, the Libyan Defendants filed their first Motion to Dismiss ("Motion to Dismiss I") alleging (a) the District Court lacked subject matter jurisdiction over the Libyan state defendants pursuant to Foreign Sovereign Immunities Act ("FSIA"), specifically 28 U.S.C. § 1605(a)(7)[1], (b) the individual Libyan  defendants were entitled to Fifth Amendment due process protection, and (3) the Plaintiffs had failed to state a claim by failing to plead their causes of action with enough specificity.

5.   On June 30, 2005, the District Court issued an opinion granting in part and denying in part Libyan Defendants' Motion to Dismiss I, and instructing the Plaintiffs to file an Amended Complaint, which would provide the basis for each Plaintiffs' cause of action.[2]  The Libyan Defendants' arguments regarding subject matter and personal jurisdiction and Fifth Amendment due process protection were denied.  Plaintiffs' claim for punitive damages against Libyan Internal Security Organization ("LISO") and Libyan External Security Organization ("LESO") were dismissed as the Court held that the old version of the FSIA did

---

[1] On January, 28, 2008, the President of the United States signed into law the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181.  Section 1083 of this Act amends the Foreign Sovereign Immunities Act by deleting 28 U.S.C. § 1605(a)(7), which was previously known as, the "state sponsored terrorism" exception to sovereign immunity, under which this cause of action was originally brought, and replaces it with 28 U.S.C. § 1605A.

[2] The new federal legislation which was signed into law on January 28, 2008, unequivocally creates a private federal cause for action the personal injuries and death of American nationals who are killed or injured in acts of terrorism by state sponsors of terrorism.  28 U.S.C. § 1605A(c).

not permit punitive damages to be awarded against the state of Libya and LISO

and LESO were agencies of the state.[3]

6.  On July 25, 2005, in accordance with the Order of the Court, Plaintiffs filed an

Amended Complaint to clarify that they had alleged state law causes of action.

7.  On July 29, 2005, the Libyan Defendants noticed an appeal of the District

Court's June 30, 2005 decision.  Libyan Defendants sought to appeal only the

District Court's decision denying their argument that the District Court lacked

subject matter jurisdiction under the FSIA, and did not seek an interlocutory

appeal of any other issue decided by the District Court.

8.  The appeal was docketed as Appeal No. 05-7112.

9.  At that time, counsel for Libyan Defendants also advised counsel for the

Plaintiffs that he intended to file a second motion to dismiss the Amended

Complaint, however, he did not identify the grounds upon which such a motion

would be based.  Accordingly, to avoid duplicative trips to the Court of Appeals,

the parties jointly agreed to move to hold Appeal No. 05-7112 in abeyance until

the District Court ruled on any subsequent motion to dismiss the Amended

Complaint, so that all appeals could be consolidated.

10.  The Parties filed a Joint Motion to Hold Appeal in Abeyance ("Joint

Motion"), which made it clear that the only matters that would proceed in a

consolidated appeal would be those that would be permitted as a matter of right,

---

[3] The new federal legislation which was signed into law on January 28, 2008, unequivocally provides that punitive damages may be awarded against a foreign state that is a state sponsor of terrorism and that causes the personal injury or death of an American national in an act torture, extrajudicial killing, aircraft sabotage, hostage taking or the provision of material support or resources for such an act.  It also unequivocally states that the foreign state shall be vicariously liable for the acts of its officials, employees and agents.  28 U.S.C. § 1605(A)(c).

pursuant to the collateral order doctrine[4], and those, if any, that the District Court might certify for interlocutory appeal.  The Joint Motion further contemplated that if no issues were certified for interlocutory appeal, the original appeal on the sole issue of subject matter jurisdiction would proceed.

11.  On December 19, 2005, the Libyan Defendants filed their second Motion to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss II").  Libyan Defendants' Motion to Dismiss II focused entirely on Fed. R. Civ. P. 12(b)(6), arguing that the Plaintiffs failed to state their state law claims in the Amended Complaint with the particularity required.

12.  On November 7, 2006, this Court issued its Opinion denying Libya's Motion to Dismiss II and held that the Plaintiffs met their burden of pleading their state law causes of action with the requisite specificity.

13.  The Libyan Defendants did not seek immediate certification of any issue decided by the District Court in Motion to Dismiss II for interlocutory appeal, nor did the Libyan Defendants move the United States Court of Appeals for the District of Columbia to re-open the original appeal, Appeal No. 05-7112.  Instead, fifty-five days after the District Court's issuance of its November 7, 2006 decision and more than a year and a half after the issuance of June 30, 2005 decision, the Libyan Defendants asked this Court to certify for interlocutory appeal (1) its November 7, 2006 decision that the FSIA does not impose heightened pleading requirements and (2) the Fifth Amendment issue decided in the June 30, 2005

---

[4] The new federal legislation, which was signed into law on January 28, 2008, unequivocally states that in actions brought pursuant the FSIA terrorism exception, appeals from orders not conclusively ending the litigation may only be taken if certified as interlocutory appeals pursuant to 28 U.S.C. § 1292(b), and accordingly abolishes the collateral order doctrine appeals that state sponsors of terrorism had been taking as a matter of right.  28 U.S.C. § 1605A(f)

decision.  The Libyan Defendants specifically moved for certification pursuant to 28 U.S.C. § 1292(b).

14.  On February 5, 2007, this Court granted in part and denied in part Libya's Motion for Certification.  The Court held that because the Libyan Defendants failed to appeal the Fifth Amendment issue when it originally appealed the June 30, 2005 decision, "Defendants may not <u>now</u> use the § 1292(b) route for appeal, given their failure to have taken a timely interlocutory appeal after issuance of the Court's June 30, 2005 Order."  This Court did certify for appeal the issue of the FSIA's notice-pleading requirements.

15.  On February 28, 2007, the Defendants sought permission from the United States Court of Appeals for the District of Columbia Circuit to appeal the issue certified by this Court for interlocutory review.  Appeal No. 07-8002.  However, because the Appellants failed to file their Petition to Appeal within the 10-day period prescribed by 28 U.S.C. § 1292(b) and Rule 5 of the Federal Rules of Appellate Procedure, on April 25, 2007, the Petition to Appeal was denied, and Appeal No. 07-8002 was closed.  At that time, the Court of Appeals returned Appeal No. 05-7112 to its active docket.

16.  On May 30, 2007, Plaintiffs then moved for summary affirmance at the Court of Appeals in Appeal No. 05-7112.

17.  On August 10, 2007, the Court of Appeals granted Plaintiffs' Motion for Summary Affirmance.

18.  On September 5, 2007, the record in Appeal 05-7112 was returned to this Court.

19.  On September 14, 2007, the mandate was issued to the Clerk of the District

Court, thereby, returning this matter back to United States District Court for the

District of Columbia for further proceedings.  See Mandate attached hereto as

Exhibit A.[5]  No Answer or other pleading has been filed by any party since the

issuance of the mandate.

20.     Subsequently, and as referenced above, on January, 28, 2008, the

President of the United States signed into law the National Defense Authorization

Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3, 338-344 (2008).

Section 1083 of this Act amends the Foreign Sovereign Immunities Act by

deleting 28 U.S.C. § 1605(a)(7), which was previously known as, the "state

sponsored terrorism" exception to sovereign immunity, under which this cause of

action was brought, and replaces it with 28 U.S.C. § 1605A.

21.  Plaintiffs advise the Court that this new law provides wide-scale extensive

legislative revisions to the FSIA provisions which specifically govern actions

against United States designated state sponsors of terrorism.  A copy of the

National Defense Authorization Act for Fiscal Year 2008, Pub. Law No. 110-181,

Sec. 1083, which contains the new 28 U.S.C § 1605A, is attached hereto as

Exhibit B for the Court's reference.

22.  This new law provides, in pertinent part, the following modifications:

---

[5] As there have been some questions raised by Counsel for the Defendants as to whether the mandate was
actually received by the District Court, on February 7, 2008, Counsel for the Plaintiffs spoke with the Clerk
of the United States Court of Appeals for the District of Columbia regarding transmittal of the mandate to
the District Court.  The Clerk of the Court of Appeals confirmed that it had been previously transmitted and
advised that the Clerk of the Court of Appeals is in possession of a signed receipt, dated September 20,
2007, signed by a member of the staff of Clerk of United States District Court Clerk's office.  Should this
become a further issue for the Court, and upon the Court's request, Counsel for the Plaintiffs will attempt to
secure written affidavits to demonstrate that the Mandate was in fact issued and received.  The Clerk of the
District Court has now reflected the receipt of the Mandate on the Court's electronic docket.

a.  Creation of a private right of action under federal law against any
foreign state that is or was a state sponsor of terrorism as described
in subsection 28 U.S.C. § 1605A(a)(2)(A)(i) and any official,
employee or agent of that foreign state while acting within the
scope of his or her office, employment for nationals of the United
States (or their legal representatives) who were injured or killed by
acts as described in subsection (a)(1).[6]  28 U.S.C. § 1605A(c).
This private cause of action allows these individuals to maintain a
federal cause of action for money damages which may include
economic damages, solatium, pain and suffering and punitive
damages.  In addition, the law provides that the foreign state shall
be vicariously liable for the acts of its officials, employees and
agents.  28 U.S.C. § 1605A(c).

b.  Provides that the amendments made by this new law apply to
pending cases   Pub. Law No. 110-181, Sec. 1083(c)(1), (c)(2).
The new law specifically states that, *inter alia*, "on motion of the
Plaintiffs…", in these circumstances the civil action shall be given
the effect as if the action had been originally filed under the new
28 U.S.C. § 1605A, Pub. Law No. 110-181, Sec. 1083(c)(2)( A),
and also specifically states that the defenses of  res judicata,

---

[6] Subsection (a)(1) states that "a foreign state shall not be immune from suits in which money damages are
sought against the foreign state for personal injury or death that was caused by an act of torture,
extrajudicial killing, aircraft sabotage, hostage taking or the provision of material support or resources for
such an act if such act or provision of material support or resources is engaged in by an official, employee
or agent of such foreign state while acting within the scope of his or her office, employment or agency."

collateral estoppel and limitation period are waived.  Pub. Law No.

110-181, Sec. 1083(c)(2)(B).

c.  Clarifies that actions may be maintained under this new Section if

the action (or a related action) was commenced under the old

provisions of 28 U.S.C. § 1605(a)(7) not later than the latter of –

'(1) 10 years after April 24, 1996; or

'(2) 10 years after the date on which the cause of action arose.

28 U.S.C. § 1605A(b);

d.  Provides a 60 day window, from January 28, 2008 (the date of

enactment) until March 28, 2008 for additional related actions to

be brought under section 1605A, which arise out of the same act or

incident, provided there is a related action that has been timely

brought under section 1605(a)(7).  Pub. Law No. 110-181, Sec.

1083(c)(3).

e.  Clarifies that foreign states who are subject to private rights of

action under 28 U.S.C. § 1605A are no longer entitled to

"collateral order" doctrine appeals, but rather may only appeal

interlocutory orders from the District Court if the appeals are

properly taken and certified by the District Court as interlocutory

appeals pursuant to 28 U.S.C. § 1292(b).

23. Plaintiffs pursuant to Pub. Law No. 110-181, Sec. 1083(c)(2) file this  Motion

for Leave to file a Second Amended Complaint, such that the Court may then

deem this action to be given the effect "if it had originally been filed under section 1605A(c)[7], in accordance with the newly enacted legislation.

24. The Plaintiffs, advise the Court that their Second Amended Complaint contains, *inter alia*, the following amendments that are explicitly allowed by the new law:

    a.   clarify that all Plaintiffs are bringing claims pursuant to the federal cause of action created by § 1605A(c); and

    b.   clarify that damages, including punitive damages, are being sought against all Defendants, including both the foreign states of Libya and Syria, and the instrumentalities and individuals named.

25. A copy of the proposed Second Amended Complaint is attached hereto as Exhibit C. Defendants have advised the Plaintiffs that they will oppose this Court granting leave to Plaintiffs to file a Second Amended Complaint.

26. Plaintiffs should be forthwith allowed to amend their Complaint to reflect the change in the controlling law. A party may amend its pleadings with the consent of opposing counsel or "when justice so requires." Fed. R. Civ. P. 15(a).

---

[7] Public Law No. 110-181, Sec. 1083(c)(2)(A) provides in pertinent part that with regard to its application to pending cases, for any prior action, such as the one that is currently before the Court, that if that action was originally brought pursuant to old section 28 U.S.C. § 1605(a)(7) or section 101(c) of Division A of Public Law 104-208, known as the "Flatow Amendment" 28 U.S.C. § 1605 note, and relied on those provisions to create a cause of action, and was adversely affected on the grounds that § 1605(a)(7) or the Flatow Amendment failed to create a cause action and is before the courts in any form, then on a motion made by the plaintiffs, in the district court where the action was initially entered, be given effect as if such action had been originally filed under § 1605A(c). Here, the action was originally brought in a timely manner by the Plaintiffs pursuant to § 1605(a)(7). In its June 30, 2005 Order, this Plaintiffs' claim was adversely affected, when this Court ruled there was no federal cause of action pursuant to the Flatow Amendment. Accordingly, as this case remains pending before this Court, pursuant to the new legislation, the Plaintiffs may make a motion to this Court to request that this action be given the effect as having been originally filed under 28 U.S.C. § 1605A(c). In making their within Motion for Leave to File an Amended Complaint, Plaintiffs are effectuating this request as explicitly required under the new legislation.

27. This standard is fulfilled when the amendment is based upon a change in law.

    *See e.g., Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999).

> Rule 15 (a) declares that leave to amend "shall be freely given
> when justice so requires"; this mandate is to be heeded. See
> generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08,
> 15.10. If the underlying facts or circumstances relied upon by a
> plaintiff may be a proper subject of relief, he ought to be
> afforded an opportunity to test his claim on the merits. In the
> absence of any apparent or declared reason -- such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc. -- the
> leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  None of the above-mentioned factors,

which support a denial of a request to amend through Fed. R. Civ. P. 15(a), exist

in this case.  Accordingly, the interests of justice and applicable law mandate that

Plaintiffs should be allowed to amend their complaint to reflect the changes in

controlling law.

28. Furthermore, as this new law has now been enacted, Plaintiffs have advised

    the Defendants that pursuant to Fed. R. Civ. P. 54(b) they will also be filing

    with this Court a Motion to Reconsider its Order of June 30, 2005 (which

    dismissed the Plaintiffs' punitive damages claim) based on a significant

    change in the controlling law.   The Defendants have advised Plaintiffs that

    they will also oppose this Court's reconsideration of the Court's June 30, 2005

    order.

29. Plaintiffs assert specifically to the Court that, as Congress has now

    unequivocally spoken to clearly indicate that punitive damages may be

    awarded against foreign states and that foreign states are vicariously liable for

the acts of their officials, employees, and agents,  this Court should vacate its Order dismissing Plaintiffs' claims for punitive damages against LESO and LISO.

30. Plaintiffs respectfully request of the Court an expedited ruling on these matters based upon the new law's 60 day statutory filing requirement under Pub. Law. No. 110-181, Sec. 1083(c)(3).  The new law requires a new action to be brought under Pub. Law. No. 110-181, Sec. 1083(c)(3) within 60 days of the date of enactment of the new law, which would be March 28, 2008. Should the Court not grant leave to file the Amended Complaint, as Plaintiffs propose, then in order to fully protect Plaintiffs' rights to proceed under the new statute, 28 U.S.C  § 1605A, and pursuant Pub. Law No. 110-181, Sec. 1083(c)(3), Plaintiffs will file a new related action within the sixty (60) day deadline, or by March 28, 2008, of enactment of the Defense Authorization Act for Fiscal Year 2008, Section 1083(c), Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-344 (2008), alleging their 1605A(c) claims against these same defendants.

31.  Accordingly, the Plaintiffs request that this Court enter an Order which:

    a.  returns this matter to an open/active case on the Court's docket;

    b.  grants the Plaintiffs motion that that pursuant Pub. Law No. 110-181, Sec. 1083(c)(2), Plaintiffs are granted leave to file a Second Amended Complaint to reflect that this matter should be given the effect as if the case had originally been filed under 28 U.S.C.§ 1605A(c), and to assert causes of action under this new statute; and that upon the Clerk

of court shall receive and file said Second Amended Complaint, to

which the Defendants shall answer or otherwise plead in accordance

with the Federal Rules of Civil Procedure;

c. orders that Plaintiffs shall have until February 22, 2008 to file their

Motion for Reconsideration pursuant to Fed. R. Civ. P. 54(b);

Defendants shall have until March 5, 2008 to file any opposition

thereto, and Plaintiffs shall have until March 12, 2008 to file a Reply

Brief, after which said Motion shall stand submitted to the Court for

ruling, subject to further orders of the Court.

A proposed Order is attached.

February 12, 2008                     Respectfully Submitted,

                                      HEIDEMAN NUDELMAN & KALIK, PC
                                      1146 19th Street NW, Fifth Floor
                                      Washington, DC 2008
                                      Telephone: 202.463.1818
                                      Facsimile: 202.463.2999

                                      By: _/s/Richard D. Heideman_____

                                        _/s/ Tracy Reichman Kalik_____
                                        Richard D. Heideman (No. 377462)
                                        Noel J. Nudelman (No. 449969)
                                        Tracy Reichman Kalik (No. 462055)

                                      Steven R. Perles (No. 326975)
                                      Edward MacAllister   (No. 494558)
                                      THE PERLES LAW FIRM, PC
                                      1146 19th Street, NW, 5th Floor
                                      Washington, DC 20036
                                      Telephone: 202-955-9055
                                      Telefax:     202-955-3806

                                      *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2008, a copy of Plaintiffs' Motion For Leave To File A Second Amended Complaint Pursuant To The Enactment Of and In Compliance With Pub.Law. 110-181, Section 1083(c) and Memorandum in Support Thereof was served via ECF:

Arman Dabiri, Esq.
1725 I Street, N.W.
Suite 300
Washington, DC  20006

Counsel for Defendants

   _Tracy Reichman Kalik_____
Tracy Reichman Kalik

# EXHIBIT A

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 07-8002**                    **September Term, 2006**

03cv00749

**Filed On: April 25, 2007** [1036573]

Socialist People's Libyan Arab Jamahiriya, et al.,
      Appellants

v.

Patrick Scott Baker, et al.,
      Appellees

_____

05-7112

Patrick Scott Baker, et al.,
      Appellees

v.

Great Socialist People's Libyan Arab Jamahiriya, et
al., _a/k/a_ Libya,
      Appellants

| MANDATE |
|---|
| Pursuant to the provisions of Fed. R. App. Pro. 41(a) |
| ISSUED: _____ 9 / 14 / 07 |
| BY: _____ |
| ATTACHED: ___ Amending Order |
| ___ Opinion |
| ___ Order on Costs |
| 03cv00749 |

**BEFORE:**    Rogers, Brown, and Kavanaugh, Circuit Judges

### O R D E R

Upon consideration of the petition for permission to appeal pursuant to 28 U.S.C. § 1292(b) filed in No. 07-8002, the opposition thereto, and the reply; and the motion to consolidate No. 07-8002 and No. 05-7112, it is

**ORDERED** that the petition for permission to appeal be denied. Appellants did not comply with the terms of the statute because they failed to file their petition for review in this court within 10 days of the district court's order certifying a question for interlocutory review. <u>See</u> 28 U.S.C. § 1292(b); <u>Carr Park, Inc. v. Tesfaye</u>, 229 F.3d 1192, 1194 (D.C. Cir. 2000). It is

**FURTHER ORDERED** that the motion to consolidate be dismissed as moot.

### Per Curiam

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 05-7112**

**September Term, 2006**
03cv00749

**Filed On: August 10, 2007**

[1059964]
Patrick Scott Baker, et al.,
        Appellees

        v.

Great Socialist People's Libyan Arab Jamahiriya, et
al., *a/k/a* Libya,
        Appellants

Syrian Arab Republic, et al.,
        Appellees

        **BEFORE:** Sentelle, Rogers, and Brown, Circuit Judges

## O R D E R

Upon consideration of the motion for summary affirmance, the opposition thereto, and the reply, it is

**ORDERED** that the motion be granted. The merits of the parties' positions are so clear as to warrant summary action. See Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam). By failing to address the issue in their opposition, appellants have waived the argument that, to establish subject matter jurisdiction under 28 U.S.C. § 1605(a)(7), a complaint must allege the defendant state sponsor of terrorism directly supported the terrorist act giving rise to the substantive claims. See Terry v. Reno, 101 F.3d 1412, 1415 (D.C. Cir. 1996). Appellants' challenges to the factual basis of the complaint's jurisdictional allegations are raised for the first time on appeal, and the court need not consider them. See District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1084 (D.C. Cir. 1984).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**Per Curiam**

# EXHIBIT B

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

## NEW SEARCH | HOME | HELP

### H.R.4986
**Title:** To provide for the enactment of the National Defense Authorization Act for Fiscal Year 2008, as previously enrolled, with certain modifications to address the foreign sovereign immunities provisions of title 28, United States Code, with respect to the attachment of property in certain judgements against Iraq, the lapse of statutory authorities for the payment of bonuses, special pays, and similar benefits for members of the uniformed services, and for other purposes.
**Sponsor:** Rep Skelton, Ike [MO-4] (introduced 1/16/2008)    Cosponsors (1)
**Related Bills:** H.R.1585
**Latest Major Action:** Became Public Law No: 110-181 [GPO: Text, PDF]

| All Information (except text) | Text of Legislation | CRS Summary | Major Congressional Actions |
|---|---|---|---|
| Titles | Cosponsors (1) | Committees | All Congressional Actions |
| Related Bills | Amendments | Related Committee Documents | All Congressional Actions with Amendments With links to *Congressional Record* pages, votes, reports |
| CBO Cost Estimates | Subjects | | |

THOMAS Home | Contact | Accessibility | Legal | FirstGov

# SEC. 1083. TERRORISM EXCEPTION TO IMMUNITY.

(a) Terrorism Exception to Immunity-

(1) IN GENERAL- Chapter 97 of title 28, United States Code, is amended by inserting after section 1605 the following:

## `Sec. 1605A. Terrorism exception to the jurisdictional immunity of a foreign state

`(a) In General-

`(1) NO IMMUNITY- A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

`(2) CLAIM HEARD- The court shall hear a claim under this section if--

`(A)(i)(I) the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or

`(II) in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083 (c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) (as in effect before the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) was filed;

`(ii) the claimant or the victim was, at the time the act described in paragraph (1) occurred--

`(I) a national of the United States;

`(II) a member of the armed forces; or

`(III) otherwise an employee of the Government of the United

States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment; and

`(iii) in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration; or

`(B) the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States District Court for the District of Columbia.

`(b) Limitations- An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) not later than the latter of--

`(1) 10 years after April 24, 1996; or

`(2) 10 years after the date on which the cause of action arose.

`(c) Private Right of Action- A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to--

`(1) a national of the United States,

`(2) a member of the armed forces,

`(3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or

`(4) the legal representative of a person described in paragraph (1), (2), or (3),

for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

`(d) Additional Damages- After an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies, by reason of the same acts on which the action under subsection

(c) is based.

`(e) Special Masters-

    `(1) IN GENERAL- The courts of the United States may appoint special masters to hear damage claims brought under this section.

    `(2) TRANSFER OF FUNDS- The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. 10603c), to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.

`(f) Appeal- In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to section 1292(b) of this title.

`(g) Property Disposition-

    `(1) IN GENERAL- In every action filed in a United States district court in which jurisdiction is alleged under this section, the filing of a notice of pending action pursuant to this section, to which is attached a copy of the complaint filed in the action, shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is--

        `(A) subject to attachment in aid of execution, or execution, under section 1610;

        `(B) located within that judicial district; and

        `(C) titled in the name of any defendant, or titled in the name of any entity controlled by any defendant if such notice contains a statement listing such controlled entity.

    `(2) NOTICE- A notice of pending action pursuant to this section shall be filed by the clerk of the district court in the same manner as any pending action and shall be indexed by listing as defendants all named defendants and all entities listed as controlled by any defendant.

    `(3) ENFORCEABILITY- Liens established by reason of this subsection shall be enforceable as provided in chapter 111 of this title.

`(h) Definitions- For purposes of this section--

    `(1) the term `aircraft sabotage' has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation;

`(2) the term `hostage taking' has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages;

`(3) the term `material support or resources' has the meaning given that term in section 2339A of title 18;

`(4) the term `armed forces' has the meaning given that term in section 101 of title 10;

`(5) the term `national of the United States' has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101 (a)(22));

`(6) the term `state sponsor of terrorism' means a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism; and

`(7) the terms `torture' and `extrajudicial killing' have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note).'.

(2) AMENDMENT TO CHAPTER ANALYSIS- The table of sections at the beginning of chapter 97 of title 28, United States Code, is amended by inserting after the item relating to section 1605 the following:

`1605A. Terrorism exception to the jurisdictional immunity of a foreign state.'.

(b) Conforming Amendments-

(1) GENERAL EXCEPTION- Section 1605 of title 28, United States Code, is amended--

(A) in subsection (a)--

(i) in paragraph (5)(B), by inserting `or' after the semicolon;

(ii) in paragraph (6)(D), by striking `; or' and inserting a period; and

(iii) by striking paragraph (7);

(B) by repealing subsections (e) and (f); and

(C) in subsection (g)(1)(A), by striking `but for subsection (a)(7)' and inserting `but for section 1605A'.

(2) COUNTERCLAIMS- Section 1607(a) of title 28, United States Code, is amended by inserting `or 1605A' after `1605'.

(3) PROPERTY- Section 1610 of title 28, United States Code, is amended--

    (A) in subsection (a)(7), by striking `1605(a)(7)' and inserting `1605A';

    (B) in subsection (b)(2), by striking `(5), or (7), or 1605(b)' and inserting `or (5), 1605(b), or 1605A';

    (C) in subsection (f), in paragraphs (1)(A) and (2)(A), by inserting `(as in effect before the enactment of section 1605A) or section 1605A' after `1605(a)(7)'; and

    (D) by adding at the end the following:

`(g) Property in Certain Actions-

    `(1) IN GENERAL- Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of--

        `(A) the level of economic control over the property by the government of the foreign state;

        `(B) whether the profits of the property go to that government;

        `(C) the degree to which officials of that government manage the property or otherwise control its daily affairs;

        `(D) whether that government is the sole beneficiary in interest of the property; or

        `(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

    `(2) UNITED STATES SOVEREIGN IMMUNITY INAPPLICABLE- Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgment entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act.

    `(3) THIRD-PARTY JOINT PROPERTY HOLDERS- Nothing in this subsection shall be construed to supersede the authority of a court to prevent

appropriately the impairment of an interest held by a person who is not liable in the action giving rise to a judgment in property subject to attachment in aid of execution, or execution, upon such judgment.'.

(4) VICTIMS OF CRIME ACT- Section 1404C(a)(3) of the Victims of Crime Act of 1984 (42 U.S.C. 10603c(a)(3)) is amended by striking `December 21, 1988 with respect to which an investigation or' and inserting `October 23, 1983, with respect to which an investigation or civil or criminal'.

(c) Application to Pending Cases-

(1) IN GENERAL- The amendments made by this section shall apply to any claim arising under section 1605A of title 28, United States Code.

(2) PRIOR ACTIONS-

(A) IN GENERAL- With respect to any action that--

(i) was brought under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), before the date of the enactment of this Act,

(ii) relied upon either such provision as creating a cause of action,

(iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and

(iv) as of such date of enactment, is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure,

that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605A(c) of title 28, United States Code.

(B) DEFENSES WAIVED- The defenses of res judicata, collateral estoppel, and limitation period are waived--

(i) in any action with respect to which a motion is made under subparagraph (A), or

(ii) in any action that was originally brought, before the date of the enactment of this Act, under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as

contained in section 101(c) of division A of Public Law 104-208), and is refiled under section 1605A(c) of title 28, United States Code,

to the extent such defenses are based on the claim in the action.

(C) TIME LIMITATIONS- A motion may be made or an action may be refiled under subparagraph (A) only--

(i) if the original action was commenced not later than the latter of--

(I) 10 years after April 24, 1996; or

(II) 10 years after the cause of action arose; and

(ii) within the 60-day period beginning on the date of the enactment of this Act.

(3) RELATED ACTIONS- If an action arising out of an act or incident has been timely commenced under section 1605(a)(7) of title 28, United States Code, or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208), any other action arising out of the same act or incident may be brought under section 1605A of title 28, United States Code, if the action is commenced not later than the latter of 60 days after--

(A) the date of the entry of judgment in the original action; or

(B) the date of the enactment of this Act.

(4) PRESERVING THE JURISDICTION OF THE COURTS- Nothing in section 1503 of the Emergency Wartime Supplemental Appropriations Act, 2003 (Public Law 108-11, 117 Stat. 579) has ever authorized, directly or indirectly, the making inapplicable of any provision of chapter 97 of title 28, United States Code, or the removal of the jurisdiction of any court of the United States.

(d) Applicability to Iraq-

(1) APPLICABILITY- The President may waive any provision of this section with respect to Iraq, insofar as that provision may, in the President's determination, affect Iraq or any agency or instrumentality thereof, if the President determines that--

(A) the waiver is in the national security interest of the United States;

(B) the waiver will promote the reconstruction of, the consolidation of democracy in, and the relations of the United States with, Iraq; and

(C) Iraq continues to be a reliable ally of the United States and partner in combating acts of international terrorism.

(2) TEMPORAL SCOPE- The authority under paragraph (1) shall apply--

(A) with respect to any conduct or event occurring before or on the date of the enactment of this Act;

(B) with respect to any conduct or event occurring before or on the date of the exercise of that authority; and

(C) regardless of whether, or the extent to which, the exercise of that authority affects any action filed before, on, or after the date of the exercise of that authority or of the enactment of this Act.

(3) NOTIFICATION TO CONGRESS- A waiver by the President under paragraph (1) shall cease to be effective 30 days after it is made unless the President has notified Congress in writing of the basis for the waiver as determined by the President under paragraph (1).

(4) SENSE OF CONGRESS- It is the sense of the Congress that the President, acting through the Secretary of State, should work with the Government of Iraq on a state-to-state basis to ensure compensation for any meritorious claims based on terrorist acts committed by the Saddam Hussein regime against individuals who were United States nationals or members of the United States Armed Forces at the time of those terrorist acts and whose claims cannot be addressed in courts in the United States due to the exercise of the waiver authority under paragraph (1).

(e) Severability- If any provision of this section or the amendments made by this section, or the application of such provision to any person or circumstance, is held invalid, the remainder of this section and such amendments, and the application of such provision to other persons not similarly situated or to other circumstances, shall not be affected by such invalidation.

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Patrick Scott Baker, et al.                    :
                                               :
              Plaintiffs,                      :
                                               :
         v.                                    :
                                               :        Case Number 03-cv-0749 (GK)
Socialist People's Libyan Arab                 :
Jamahirya, et al.                              :
                                               :
              Defendants.                      :
. . . . . . . . . . . . . . . . . . . . . . . . . . :

### SECOND AMENDED COMPLAINT

In accordance with the enactment of the National Defense Authorization Act for

Fiscal Year 2008 on January 28, 2008 of Pub. Law 110-181, Sect. 1083, and Plaintiffs'

Motion for Leave to File Second Amended Complaint, Plaintiffs hereby file their Second

Amended Complaint.

Plaintiffs, Patrick Scott Baker, Jerry Baker, Lois Baker, Craig Baker, Craig Baker

as the Personal Representative of the Estate of David Baker, Stacie Baker, Jackie Nink

Pflug, Jim Olsen, Tanner Olsen, Rylma Nink, Eugene Nink, Gloria Nink, Mary Nink,

Scott Pflug, Patricia A. Henry  as the Substitute Executrix and Successor in Interest of the

Estate of Scarlett Rogencamp, Patricia A. Henry as Executrix of the Estate Hetty E.

Peterson, Valerie Peterson as the Executor of the Estate of Vernon W. Peterson, Patricia

A. Henry, Katharine D. Doris, Paul G. Peterson, and Michelle Y. Holbrook bring this

action pursuant to the provisions of 28 U.S.C. § 1602, *et seq*., seeking damages for

personal injuries to Patrick Scott Baker, Scarlett Rogencamp and Jackie Nink Pflug, and

for injury to each of them, as hereinafter set forth.

This action arises out of the hostage taking, injuries of Patrick Scott Baker, injuries and death of Scarlett Rogencamp and injuries of Jackie Nink Pflug carried out as described below acting under the instruction and/or control of the Defendants and/or utilizing the funding provided by the governments of Libya and Syria as state sponsors of terrorism and others who support terrorism, and to which actions the Defendants rendered material support. Plaintiffs state in support of their Second Amended Complaint and allege as follows:

<strong><u>JURISDICTION AND VENUE</u></strong>

1.      Jurisdiction over the subject matter of this case arises under 28 U.S.C. § 1605A, 28 U.S.C. §§ 1330 (a), and 1331.

2.      Defendants Great Socialist People's Libyan Arab Jamahiriya (hereinafter "Libya"), al 'Amn-al Dhakhili (hereinafter "Libyan Internal Security Agency"), al-'Amn al Khariji (hereinafter "Libyan External Security Agency"), Syrian Arab Republic (hereinafter "Syria"), and the Syrian Air Force Intelligence are subject to suit in the courts of the United States as sponsors of the Abu Nidal Organization's activities pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and related statutes.

3.      Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and related statutes .

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

2

5.    Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism acting by and through their officials, employees and agents within the meaning of 28 U.S.C. §1605A include causes of action arising out of the federal counterterrorism statute(s) and state common law and statutory law.

## THE PARTIES

6.    Plaintiff, Patrick Scott Baker, is currently a resident and citizen of the State of Washington. At the time of the acts alleged in this Complaint, and throughout his entire lifetime, Patrick Scott Baker was and is an American Citizen. Patrick Scott Baker was, at all pertinent times alleged herein, a victim of "torture" and "hostage taking" as defined in Section 3 of the Torture Victims Protection Act of 1991 (hereinafter "TVPA"), 28 U.S.C. § 1350. He suffered "personal injury" as the result of Defendants' actions and activities as defined in 28 U.S.C. § 1605A. Plaintiff Patrick Baker can sue and be sued in this Court.

7.    Plaintiff Jerry Baker is a resident and citizen of the State of Washington. At all times relevant hereto, Jerry Baker was, and is, the father of Plaintiff Patrick Scott Baker. Plaintiff Jerry Baker can sue and be sued in this Court.

8.    Plaintiff, Lois Baker, is a resident and citizen of the State of Washington. At all times relevant hereto, Lois Baker was, and is, the mother of Plaintiff Patrick Scott Baker. Plaintiff Lois Baker can sue and be sued in this Court.

9.    Plaintiff, Craig Baker, is a resident and citizen of the State of Washington. At all times relevant hereto, Craig Baker was, and is, the brother of Plaintiff Patrick Scott Baker. Plaintiff Craig Baker can sue and be sued in this Court.

3

10.     Plaintiff, Craig Baker is the Personal Representative for the Estate of David

Baker, and brings this action in his capacity as such. David Baker died in the summer of

1991. At all times relevant hereto, David Baker was a brother of Plaintiff Patrick Scott

Baker. Plaintiff, Estate of David Baker can sue and be sued in this Court.

11.     Plaintiff, Stacie Baker, is a resident and citizen of the State of Washington.

At all times relevant hereto, Stacie Baker was, and is, the sister of Plaintiff Patrick Scott

Baker. Plaintiff Stacie Baker can sue and be sued in this Court.

12.     Plaintiff, the Estate of Hetty E. Peterson is a State of Washington Estate.

The Estate is represented in this action through its Administrator, Patricia A. Henry. The

Estate of Hetty E. Peterson can sue and be sued in this Court Before her death, Hetty E.

Peterson was named Executrix of the Estate of Scarlett Rogencamp in accordance with an

Order of the Superior Court of California, County of San Diego, North County Judicial

District. At all times relevant hereto, Hetty E. Peterson was mother of Plaintiff Scarlett

Rogencamp. At the time of her death, Scarlett Rogencamp was a resident and citizen of

California. Under the terms of Scarlett Rogencamp's will, which has been probated with

the Superior Court of California, County of San Diego, North County Judicial District,

Mrs. Peterson was the sole beneficiary of Scarlett Rogencamp's estate. Patricia A. Henry,

Scarlett Rogencamp's sister, now serves as the substitute Administrator of the Scarlett

Rogencamp estate.

13.     Hetty E. Peterson is the "successor in interest" to all causes of action that

otherwise would belong to the Estate of Scarlett Rogencamp and accordingly may

prosecute, in the successor's own name, all such causes of action. California Code of

Civil Procedure, §§ 377.10, 377.11, 377.30, 377.31

4

14.     At the time of the acts alleged, Scarlett Rogencamp was, and throughout her lifetime, an American citizen.    Scarlett Rogencamp was, at all pertinent times alleged herein, a victim of "torture" and "hostage taking" as defined in Section 3 of the TVPA, 28 U.S.C. 1350. She suffered "personal injury" as the result of Defendants' actions and activities as defined in 28 U.S.C. § 1605A. Said Estate can sue, by and through the Executrix of Scarlett Rogencamp, and be sued in this Court.

15.     Plaintiff, Valerie Peterson is the Executor of the Estate of Vernon W. Peterson, and brings this action in her capacity as such. Vernon W. Peterson died on March 7, 1999. At all times relevant hereto, Vernon W. Peterson was the father of Plaintiff Scarlett Rogencamp. Plaintiff Estate of Vernon W. Peterson can sue and be sued in this Court.

16.     Plaintiff, Patricia A. Henry, is a resident and citizen of the State of Washington. At all times relevant hereto, Patricia A. Henry was, and is, the sister of Scarlett Rogencamp. Plaintiff Patricia A. Henry can sue and be sued in this Court.

17.     Plaintiff, Katherine D. Doris, is a resident and citizen of the State of Washington. At all times relevant hereto, Katherine D. Doris was, and is, the sister of Scarlett Rogencamp. Plaintiff Katherine D. Doris can sue and be sued in this Court.

18.     Plaintiff, Paul G. Peterson, is a resident and citizen of the State of Washington. At all times relevant hereto, Paul G. Peterson was, and is, the brother of Scarlett Rogencamp. Plaintiff Paul G. Peterson can sue and be sued in this Court.

19.     Plaintiff, Michelle Y. Holbrook, is a resident and citizen of the State of Washington. At all times relevant hereto, Michelle Y. Holbrook was, and is, the sister of Scarlett Rogencamp. Plaintiff Michelle Y. Holbrook can sue and be sued in this Court.

20.   Plaintiff, Jackie Nink Pflug, is currently a resident and citizen of the State of Minnesota. At the time of the acts alleged in this Complaint, and throughout her entire lifetime, Jackie Nink Pflug was an American Citizen. Jackie Nink Pflug was, at all pertinent times alleged herein, a victim of "torture" and "hostage taking" as defined in TVPA, 28 U.S.C. § 1350. She suffered "personal injury" as the result of Defendants' actions and activities as defined in 28 U.S.C. § 1605A. Said Plaintiff, Jackie Nink Pflug, can sue and be sued in this Court.

21.   Plaintiff, Rylma Nink, is a resident and citizen of the State of Texas. At all times relevant hereto, Rylma Nink was, and is, the mother of Plaintiff Jackie Nink Pflug. Plaintiff Rylma Nink can sue and be sued in this Court.

22.   Plaintiff, Eugene Nink, is a resident and citizen of the State of Texas. At all times relevant hereto, Eugene Nink was, and is, the father of Plaintiff Jackie Nink Pflug. Plaintiff Eugene Nink can sue and be sued in this Court.

23.   Plaintiff, Jim Olsen, is a resident and citizen of the State of Minnesota. On May 25, 1997, Plaintiff Jim Olsen married Plaintiff Jackie Nink Pflug and is currently her husband. Plaintiff Jim Olsen can sue and be sued in this Court.

24.   Plaintiff, Tanner Olsen, is a resident and citizen of the State of Texas. Plaintiff Tanner Olsen is the son of Plaintiff Jackie Nink Pflug and Plaintiff Jim Olsen, and was born August 6, 1997. Plaintiff Tanner Olsen can sue and be sued in this Court.

25.   Plaintiff Gloria Nink is a resident and citizen of the State of Texas. At all times relevant hereto, Gloria Nink was, and is, the sister of Plaintiff Jackie Nink Pflug. Plaintiff Gloria Nink can sue and be sued in this Court.

6

26.    Plaintiff Mary Nink is a resident and citizen of the State of Texas. At all times relevant hereto, Mary Nink was, and is, the sister of Plaintiff Jackie Nink Pflug. Plaintiff Mary Nink can sue and be sued in this Court.

27.    Plaintiff, Scott Pflug, is a resident and citizen of the State of Minnesota. At the time of the incident described herein, Plaintiff Scott Pflug was the husband of Plaintiff Jackie Nink Pflug. Plaintiff Scott Pflug and Plaintiff Jackie Nink Pflug were divorced in October 1988. Plaintiff Scott Pflug can sue and be sued in this Court.

28.    Defendant Libya was a foreign state that had been designated a state sponsor of terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) from December 29, 1979 until 2006, and during the time of the attack as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(I) and (II). Libya at all times pertinent to this action, provided material support and resources to Abu Nidal. Abu Nidal, at all times pertinent to this action, has operated, among other things, in Libya, Iraq, Lebanon, Syria and carries out both military operations and a campaign of terrorism. This terrorist campaign has included, but not limited to, attacks in 20 countries, killing or injuring almost 900 persons. Targets include the United States, the United Kingdom, France, Israel, moderate Palestinians, the PLO and various other countries. Libya, through its actions is and/or has been a sponsor of Abu Nidal, within the meaning of 28 U.S.C. § 1605A and Public Law 110-181, Section 1083, by providing it with funding, direction and training for its terrorist activities.

29.    Defendant Syria is a foreign state that has been designated and remains designated as a state sponsor of terrorism pursuant to § 6(j) of the Export Administration

7

Act of 1979 (50 U.S.C. App. § 2405(j)) and § 620(A) of the Foreign Assistance Act of

1961 (22 U.S.C. § 2371) since January 19, 1984 as required by 28 U.S.C. §

1605A(a)(2)(A)(i)(I) and (II).  Syria at all times pertinent to this action, provided material

support and resources to the ANO ("Abu Nidal").  Abu Nidal, at all times pertinent to this

action, and to the present, operates, among other things, in Libya, Iraq, Lebanon, Syria

and carries out both military operations and a campaign of terrorism.  This terrorist

campaign has included, but not limited to, attacks in 20 countries, killing or injuring

almost 900 persons.  Targets include the United States, the United Kingdom, France,

Israel, moderate Palestinians, the PLO and various other countries. Syria, through its

actions is and/or has been a sponsor of Abu Nidal, within the meaning of 28 U.S.C. §

1605A by providing it with funding, direction and/or training for its terrorist activities.

30.   Defendant Libyan Internal Security ("LISO") is one of the Libyan

intelligence services through which Libya sponsored Abu Nidal, which caused the

terrorist acts described below.

31.   Defendant Libyan External Security ("LESO") is one of the Libyan

intelligence services through which Libya sponsored Abu Nidal, which caused the

terrorist acts described below.

32.   Defendant Mu'ammar al Qadhdhafi is the leader of Libya and performed

acts within the scope of his office, which caused the terrorist acts described below.

33.   Defendant Major 'Abdallah al-Sanusi was the head of the Libyan Internal

Security Agency and performed acts within the scope of his office, which caused the

terrorist acts described below.

34.   Defendant Ibrahaim al-Bishari was the head of the Libyan External Security Agency and performed acts within the scope of his office, which caused the terrorist acts described below.

35.   Defendant Syrian Air Force Intelligence is the Syrian intelligence services through which Syria sponsored Abu Nidal, which caused the terrorist acts described below.

36.   Defendant General Muhammed al-Khuli was the chief of the Syrian Air Force Intelligence and performed acts within the scope of his office, which caused the terrorist acts described below.

37.   Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices, which caused the extrajudicial killing and personal injuries resulting from the act of terrorism described herein.  Accordingly, said defendants are jointly and severally liable to plaintiffs.

38.   Defendants Libya, and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari are directly, and pursuant to 28 U.S.C. § 1605A(c) and state law, vicariously responsible for the actions of their co-defendants because they sponsored the Abu Nidal Organization.  Accordingly, defendants are jointly and severally liable to plaintiffs.

## DEFENDANTS' SPONSORSHIP AND SUPPORT FOR
## THE ABU NIDAL ORGANIZATION

39.    The government of Libya and also separately the government of Syria

sponsored and supported the Abu Nidal Organization, a/k/a Black September, the Fatah

Revolutionary Council, the Arab Revolutionary Council, the Arab Revolutionary

Brigades, the Revolutionary Organization of Socialist Muslims, (hereinafter "ANO") a

known terrorist organization, headed by Sabri Al Bana, prior to November 23, 1985, the

date of the hijacking of Egypt Air Flight 648.

40.    The substantial material support to and sponsorship of the ANO by the

government of Libya included, but not limited to, assisting and/or providing the

following:

      a.    funds,

      b.    facilities,

      c.    airline tickets,

      d.    free and unobstructed entry into, safe haven in, and exit from Libya by

         members of ANO,

      e.    terrorist training in Libyan camps,

      f.    use of the privilege of Libya's "diplomatic pouch",

      g.    use of Libya's diplomatic freight privileges,

      h.    official documents of all kinds, and

      i.    actual operational assistance in pre-positioning of people and supplies

         for the conduct of the hijacking of Flight 648.

41.    On two separate occasions shortly prior to the hijacking event, one or more

of the hijackers met in Athens with a Libyan government official regarding the planned

hijacking. In addition, without the support provided by and involvement of this Libyan official, this particular terrorist event would not have taken place.

42.    More specifically, in this particular instance the government of Libya supported this operation by, among other things:

   a. providing at least some of the ANO hijackers with Tunisian passports, which allowed the hijackers to travel and

   b. transporting to Athens by Libyan government representatives in its "diplomatic pouch" the weapons used by the ANO hijackers to pre-position the weapons in Athens for pick up at the Athens Airport by the ANO resident agent.

43.    The ANO resident agent then passed the weapons and other support material to the ANO "cut-out," who then passed the weapons and materials to an ANO leader, who then provided the weapons and support material to the ANO hijackers.

44.    Once the hijackers departed on the Egypt Air flight, the ANO cut-out and the ANO leader, both of whom had been brought to Greece for their particular task, left Greece.

45.    The sponsorship by the government of Syria included, among other things, the providing of training in Syrian sponsored ANO terrorist training camps, military and general intelligence, safe haven and free passage in and through Syrian controlled territory.

46.    Syria provided general material support to the ANO by providing ANO with funds, travel documents, training support and protection at several facilities, including those located in the Bekaa Valley. Syrian military and government intelligence agents

were present around the ANO terrorist training camp maintained in the Syrian controlled Bekaa Valley located in Lebanon.

47.     The Defense Intelligence Agency of the United States Department of Defense, and other intelligence agencies of the United States government, as well as the United States Department of State determined that the hijacking of the Egypt Air Flight 648 on November 23, 1985 was conducted by members of the terrorist organization known as the ANO, and that the organization and act were sponsored by (a) the government of Libya, which provided general and specific material support for ANO, thereby enabling ANO to commit this hijacking; and that the ANO was also sponsored by (b) the government of Syria, which provided general material support for ANO and its terrorist members

48.  The providing of material support for the ANO, a known terrorist organization, by the government of Libya and the government of Syria, acting directly and by and through their individual governmental representatives as named in the complaint, and by other representatives of the government, constitute violations of applicable and numerous United States laws, thereby rendering the government of Libya, and the government of Syria, and their individual governmental representatives named as defendants herein jointly and severally liable for their illegal acts and deeds.

**FACTUAL ALLEGATIONS**

49. On or about November 13, 1985, an ANO operative, Omar Rezaq ("Rezaq"), traveled from Beirut to Athens, Greece, for the express purpose of participating in an ANO mission to hijack an airplane.

50. On November 23, 1985, three (3) ANO operatives, one of whom was Rezaq, boarded Egypt Air Flight 648, having used illegal passports provided to them for the purpose of accomplishing the mission of hijacking the plane.

51. On November 23, 1985, Egypt Air Flight 648 had taken off from Athens, Greece, and headed in a southeasterly direction towards Cairo, Egypt, its planned destination.

52. On board was a typically multinational and multicultural mix of passengers, including, but not limited to, Egyptians, Greeks, Filipinos, Israelis and three (3) Americans.

53. The three (3) Americans on Flight 648 were decedent Scarlett M. Rogenkamp, Plaintiff Patrick Baker and Plaintiff Jackie Pflug.

54. Some minutes into the flight, terrorists from the ANO hijacked the plane, contrary to law, and placed the passengers in great danger and fear for their lives. The hijackers used weapons provided by Libyan government agents which had been transported in Libyan diplomatic pouch(es).

55. The passengers were instructed to surrender their passports.

56. After a mid-flight shootout between an Egyptian Sky Marshall and one of the hijackers, which resulted in the death of a hijacker, the wounding of the Sky Marshall, and two stewardesses, as well as the piercing of the fuselage, Flight 648 was diverted to Malta.

57. At first, the tower at Malta's International Airport refused to let Flight 648 land, but authorities relented after Captain Galal told them that the plane was in imminent danger of crashing into the sea because he was nearly out of fuel.

13

58.    Even so, the runway lights were still off and Galal, with a gun barrel at his head, had to rely on his plane's landing light to pierce the darkness as he landed at Malta's International Airport, which placing the passengers in further great danger and fear for their lives.

59.    The tower ordered Flight 648 to taxi to a remote parking area; four police buses then blocked both ends of the runway.

60. The terrorists demanded that the airport authorities of Malta refuel the plane.

61. The airport authorities of Malta refused to comply with the terrorists' demands.

62. At that time, the terrorists threatened to shoot a passenger every fifteen minutes unless the Maltese agreed to refuel the plane.

63. Meanwhile, in a response to an appeal from the pilot, the terrorists agreed to release eleven women; seven Filipinos and four Egyptians.

64. Thereafter, the terrorists asked for the two Israeli women to identify themselves.

65. Thinking that she too would be released, Tamar Artzi rose from her seat and went to the front of the aircraft. At that time, one of the terrorists aimed his pistol at her head and pulled the trigger. Thinking that Ms. Artzi was dead or mortally wounded, the terrorists threw her out of the plane and onto the tarmac.

66. At this point, it being abundantly clear to the remaining passengers, including plaintiffs Scarlett Rogencamp, Jackie Nink Pflug and Scott Patrick Baker, the terrorists were not just going to let everyone go, but that they intended to kill people.

67. Having just witnessed her friend being shot, Nitzan Mendelson, the second and last Israeli citizen on the plane, did not identify herself. Unfortunately, the terrorists were able to identify her from her passport photo.

68. With her hands tied, Nitzan Mendelson was dragged to the open doorway, where she was shot in the head and thrown onto the runway.

69. Ms. Mendelson never regained consciousness and was pronounced dead three days later. Ms. Artzi miraculously recovered from her injuries.

70. Next on the terrorists agenda were the three American passengers.

71. One by one, each of the Americans were brought to the front of the plane where they were shot in the head and thrown out of the plane onto the tarmac.

72. Patrick Scott Baker was the first American to be shot and thrown from the plane onto the tarmac. While he was injured and laying on the tarmac, the hijackers actually carried Patrick back up the stairs only to throw him off of the plane again; hoping this time to insure his death. This time Patrick pretended to be dead, and waited for the terrorists to go back inside the plane. At all times, Patrick was in fear for his life and suffered great pain and mental anguish. Patrick survived the assault, battery, shooting, wounding and maiming which he suffered, but has been forced to live with the experience of having been shot in the head, and having been forced to experience the hijacking and to watch as the two Israeli women were shot in the head, knowing he would be next.

73. During this entire time, Scarlett Rogenkamp and Jackie Pflug remained in their seats, knowing that they were the next targets of the terrorists. Each was in great danger and in fear for their lives.

74. The terrorist next called for Scarlett Rogencamp.  Scarlett, like the three prior victims, was shot in the head and tossed from the plane.  Scarlett was later pronounced dead

75. Lastly, Jackie Pflug, who had been forced to watch the slaying and maiming of the two Israeli and other two American passengers, and knowing that she was the next to be killed was brought to the front of the plane, where she, too, was brutally and mercilessly shot in the head and thrown from the plane onto the tarmac.

76. While Jackie's injuries were not fatal, they were severe and permanent. Jackie suffers from brain injuries as a direct and proximate result of her having been shot by the terrorists.

77. Each time the leader of the terrorists shot a passenger, he danced and sang and made jokes to his comrades.  This joyful dancing while the terrorist murdered and maimed the Israeli and American passengers was witnessed by each passenger as he and she awaited their own fate, in fear for the lives..

78. Egyptian commandos stormed the plane in an attempt to rescue the passengers twenty-four hours after the hijacking began, while the aircraft was still on the ground in Malta.

79. Unfortunately, in the rescue attempt, 57 other passengers died.

80. During the course of the commando rescue attempt, Rezaq, the leader of the terrorist hijacking, and the gunman that the Plaintiffs believe shot Patrick Baker, Scarlett Rogencamp, Jackie Pflug and the Israeli women, escaped, but was later captured by the authorities of Malta.  Rezaq was convicted and charged with a number of crimes.  He served seven years in a jail in Malta, but was then released.

81. In July 1993, special agents of the Federal Bureau of Investigation in Nigeria arrested Rezaq.

82. Rezaq was tried and convicted in the United States on one count of air piracy. Rezaq is currently serving a life sentence in a federal penal institution in Denver, Colorado

83. The United States Department of State, Office of the Historian, Bureau of Public Affairs, in its report of Significant Terrorist Incidents, 1961- 2001, lists the Egyptian Airliner Hijacking of November 23, 1985 as a terrorist act that was conducted by the Abu Nidal Group

84. Background Information on Foreign Terrorist Organizations, released by the Office of Counterterrorism, of the United States Department of State, indicates that the ANO has received considerable support, including safe haven, training, logistic assistance, and/or financial aid from the States of Libya and Syria, each being a Defendant herein.

85. The instances of physical violence inflicted upon Patrick Scott Baker, Scarlett Rogencamp and Jackie Nink Pflug were undertaken intentionally upon them for the purpose of furthering the terrorist objectives of Abu Nidal and the governments of Libya and Syria, and such acts therefore constitute "torture" as defined in the TVPA.

## COUNT I - 28 U.S.C. §1605A(c)

### (All Plaintiffs)

86. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

87. On November 23, 1985, members of the ANO willfully, violently and forcefully committed terrorist acts on board Egypt Air Flt 648 with the express purpose of inflicting personal injury, severe pain and suffering, death, and severe emotional injuries.

88. In addition, the acts of assaulting, terrorizing and holding Patrick Baker, Jackie Nink Pflug, and Scarlett Rogencamp captive and each and all of the acts set forth above, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress, including solatium, upon members of their families. Further these acts were undertaken for the purpose of causing severe mental duress and suffering, including solatium damages, upon the members of their families.

89. The willful, wrongful and intentional acts of Abu Nidal terrorists were sponsored and directed by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, and Libyan Internal Security Agency.

90. Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices which sponsored the ANO 's terrorist activities, including but, not limited to the Egypt Air Highjacking.

91. As a direct and proximate result of the willful, wrongful and intentional acts of the ANO members, whose acts were sponsored and directed by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari, Plaintiffs Patrick Baker, Jackie Nink Pflug

and Scarlett Rogencamp were injured and/or killed and they and/or their families endured

extreme mental anguish, physical injury and pain and suffering, all to their damage.

WHEREFORE, Plaintiffs, and each of them, on behalf of the estate and heirs of

Scarlett Rogencamp, and on behalf of Patrick Baker and Jackie Nink Pflug and their

families demand that judgment be entered, jointly and severally, against Defendants for

the damages they suffered, including, but not limited to wrongful death, pain, suffering,

mental anguish, and pecuniary losses, in the amount of ONE HUNDRED MILLION

($100,000,000.00) US Dollars for each of them, on this Count I, and their costs

expended; as to each of their, mothers, father, sisters, brothers, daughters, spouses and

sons above named, above in the amount of TEN MILLION DOLLARS ($10,000,000.00)

for each and every one of them, on this Count I, and their costs expended.

### COUNT II – BATTERY
### (Under 28 U.S.C. §1605A(c) and State Common Law)

(Patrick Scott Baker, Estate of Hetty Peterson, by and through its Administrator, Patricia
Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett
Rogencamp and Jackie Nink Pflug)

92. Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in all the foregoing paragraphs as if fully set forth herein.

93. On November 23, 1985, members of Abu Nidal willfully, violently and

forcefully seized and hijacked Egypt Air Flight 648. Patrick Baker, Scarlett Rogencamp

and Jackie Nink Pflug were passengers on said flight and were accordingly seized and

abducted against their will. The willful, wrongful and intentional acts of Abu Nidal were

sponsored by Libya, and Syria, as well as the Syrian Air Force Intelligence, the Libyan

External Security Agency, and Libyan Internal Security Agency constituted a battery

upon the person(s) of Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug, causing injury to them as set forth above.

94. Defendants General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari performed acts within the scope of their offices which sponsored Abu Nidal's terrorist activities, including but, not limited to the highjacking of Egypt Air Flight 648.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be entered, jointly and severally, against the Defendants jointly and severally in the amount of **FIFTY MILLION ($50,000,000.00) US Dollars** for each of them on this Count II, and their costs expended.

### COUNT III – ASSAULT
#### (Under 28 U.S.C. §1605A(c) and State Common Law)
(Patrick Scott Baker, Estate of Hetty Peterson, by and through its Administrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp and Jackie Nink Pflug)

95. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs in all the forgoing paragraphs as if fully set forth herein.

96. During the time Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug were held as hostages by Abu Nidal, their captors intentionally and willfully put them in fear for their lives and apprehension of harm and injury as a direct result of their constant threats to harm or kill them, and the physical and mental abuse they inflicted upon them.

97. As a direct and proximate result of the willful, wrongful and intentional acts of Abu Nidal members, whose acts were sponsored by Libya and Syria, as well as the

Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal

Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major

Abdallah al-Sanusi, and Ibrahaim al-Bishari; Patrick Baker, Scarlett Rogencamp and

Jackie Nink Pflug were injured in that they endured extreme mental anguish, physical

injury and pain and suffering, all to their damage.

   **WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of

Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be

entered, jointly and severally, against the Defendants jointly and severally in the amount

of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** for each of them, on this

Count III, and their costs expended.

### COUNT IV – FALSE IMPRISONMENT
### (Under 28 U.S.C. §1605A(c) and State Common Law)
(Patrick Scott Baker, Estate of Hetty Peterson, by and through it Administrator, Patricia
A. Henry, as the Sole Benificiary and Successor in Interest of the Estate of Scarlett
Rogencamp and Jackie Nink Pflug)

   98. Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in all of the foregoing paragraphs as if fully set forth herein.

   99. During the time that Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug

were held in captivity by Abu Nidal, they were deprived of their liberty and had no

means of escape.

   100.    As a direct and proximate result of the willful, wrongful and intentional

acts of Abu Nidal members, whose acts were  sponsored by Libya and Syria as well as

the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal

Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major

Abdallah al-Sanusi, and Ibrahaim al-Bishari; Patrick Baker, Scarlett Rogencamp and

Jackie Nink Pflug were deprived of their freedom and liberty and injured in that they endured extreme mental anguish and pain and suffering, and each was subjected to intense physical injury, pain, discomfort and inconvenience and loss of their freedoms and liberty.

WHEREFORE, Plaintiffs, and each of them, on behalf of the estate and heirs of Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be entered, jointly and severally, against the Defendants jointly and severally in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** for each of them on this Count IV, and their costs expended.

**COUNT V – INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM
(Under 28 U.S.C. 1605A and State Common Law)**

(As to All Plaintiffs)

101.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all of the forgoing paragraphs as if fully set forth.

102.    The acts of abducting and holding Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug captive and each and all of the acts set forth above, including, but not limited to, the holding of each Plaintiff hostage while they witnessed the shooting in the head of other passengers, calling each one up to receive their own bullet into their heads, constituted extreme and outrageous conduct with the intent to inflict emotional distress upon them and emotional distress, including solatium, pain, suffering and malicious killing and wounding upon each of the hostage victims and upon members of their families.  Further these acts were undertaken for the purpose of causing mental duress and suffering, including solatium, upon the members of their families.

103.    As a direct result and proximate result of the willful, wrongful and

intentional acts of Abu Nidal, whose acts were sponsored by Libya and Syria as well as

the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal

Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major

Abdallah al-Sanusi, and Ibrahaim al-Bishari; Patrick Baker, Scarlett Rogencamp and

Jackie Nink Pflug and their families, as above set forth, were each caused to suffer severe

emotional distress.

**WHEREFOR**E, Plaintiffs, and each of them, on behalf of the estate and heirs of

Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be

entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED**

**MILLION ($100,000,000.00)** US Dollars for each of them, and their costs expended; as

to each of their, mothers, father, sisters, brothers, daughters, spouses and sons above

named, above in the amount of **TEN MILLION DOLLARS ($10,000,000.00)** for each

and every one of them; and their costs expended.

## COUNT VI – ACTION FOR WRONGFUL DEATH
### (Under 28 U.S.C. §1605A(c), State Common Law and State Statutory Law)

(Estate of Hetty Peterson, sole beneficiary and Successor in Interest of the Estate of
Scarlett Rogencamp, by and through its substitute Administrator, Patricia A. Henry)

104.    Plaintiff, the Estate of Hetty Peterson, by and through its Adminstrator,

Patricia A. Henry, and as the sole beneficiary and Successor in Interest of the Estate of

Scarlett Rogencamp, repeats, realleges and incorporates by reference those facts and

allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

105.    Scarlett Rogencamp's death was caused by a willful and deliberate act of

extra judicial killing as she was shot in the head by members of the ANOduring the

course of their terrorist act of murder against her, as on American citizens, acting under

the sponsorship of defendants Libya and Syria as well as the Syrian Air Force

Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency,

General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and

Ibrahaim al-Bishari.

**WHEREFORE,** Plaintiff the Estate of Hetty Peterson, by and through its

Administrator, Patricia A. Henry, as the sole beneficiary and Successor in Interest of the

Estate of Scarlett Rogencamp demands that judgment be entered, jointly and severally,

against Defendants in the amount of **ONE HUNDRED MILLION ($100,000,000.00)**

**US Dollars** on this Count VI, and their costs expended.

### COUNT VII– ACTION FOR SURVIVAL DAMAGES
### (Under 28 U.S.C. §1605A(c), State Common Law and State Statutory Law)

(Estate of Hetty Peterson, by and through its Adminsitrator Patricia A. Henry, as the Sole
Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp)

106.    Plaintiff, the Estate of Hetty Peterson, by and through its Adminstrator,

Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of

Scarlett Rogencamp, repeats, realleges and incorporates by reference those facts and

allegations set forth in each of the foregoing paragraphs if fully set forth.

107.    Before her death, Scarlett Rogencamp suffered extreme bodily pain and

mental anguish and suffering, entitling her estate to compensatory damages.

108.    Defendants Libya and Syria as well as the Syrian Air Force Intelligence,

the Libyan External Security Agency, Libyan Internal Security Agency, General

Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim

al-Bishari are directly and/or vicariously responsible for the actions of their co-defendants because they acted as sponsors of the Abu Nidal Organization.

**WHEREFORE,** Plaintiff the Estate of Hetty E. Peterson, by and through its Administrator, Patricia A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett Rogencamp demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED MILLION ($100,000,000.00) US Dollars** on this Count VII, and their costs expended.

## COUNT VIII – ACTION FOR CIVIL CONSPIRACY
### (Under 28 U.S.C. §1605A(c) and State Common Law)

(As to All Plaintiffs)

109.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

110.    Defendants Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari did knowingly and willfully conspire with and/or agree to sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605A, which terrorist organization willfully and deliberately committed an act of terrorism, which caused the injuries, and/or death of Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug.

111.    For the reasons stated above, and having conspired to sponsor the terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug, all defendants are jointly and severally liable to plaintiff for all damages in this civil action.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS** for each of them, and costs expended.

## COUNT IX – ACTION FOR AIDING AND ABETTING
**(Under 28 U.S.C. §1605A(c), State Common Law and State Statutory Law)**

(As to All Plaintiffs)

112.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

113.    Defendants Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari did knowingly and willfully provide substantial assistance, material support, resources and sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605A, which terrorist organization willfully and deliberately committed an act of terrorism, which caused the injuries, and/or death of Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug

114.    For the reasons stated above, and having aided and abetted a terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of Patrick Baker, Scarlett Rogencamp and Jackie Nink Pflug, all defendants are jointly and severally liable to plaintiffs for all damages in this civil action.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be

26

entered, jointly and severally, against Defendants in the amount of **ONE HUNDRED**

**FIFTY MILLION ($150,000,000.00) DOLLARS** for each of them, and costs expended.

<u>COUNT X ECONOMIC DAMAGES</u>
**(Under 28 U.S.C. §1605A(c), State Common Law and State Statutory Law)**

(Patrick Scott Baker, Estate of Hetty Peterson, by and through its Administrator, Paticia
A. Henry, as the Sole Beneficiary and Successor in Interest of the Estate of Scarlett
Rogencamp and Jackie Nink Pflug)

115. Plaintiffs repeat, reallege and incorporate by reference those facts and

allegations set forth in each of the foregoing paragraphs as if fully set forth.

116. As a direct and proximate result of the willful, wrongful, intentional,

outrageous, reckless and illegal acts of Abu Nidal members, whose acts were sponsored

by Libya and Syria as well as the Syrian Air Force Intelligence, the Libyan External

Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli,

Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari; Patrick

Baker, Scarlett Rogencamp and Jackie Nink Pflug each incurred economic damages in

that they were deprived of employment and economic opportunities while held hostage,

and deprived of future employment and economic opportunities after their release.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of

Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be

entered, jointly and severally, against Defendants in the amount of **THIRTY MILLION**

**($30,000,000.00) DOLLARS** for each of them, and costs expended.

## COUNT XI – PUNITIVE DAMAGES
### (Under 28 U.S.C. 1605A and State Common Law)

(As to All Plaintiffs)

117.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

118.    The actions of Abu Nidal, as above set forth, were intentional and malicious and in willful, wanton and reckless disregard of Patrick Baker's, Scarlett Rogencamp's and Jackie Nink Pflug's rights and physical well being.  All of the acts of Abu Nidal were facilitated by funding, training, support and sponsorship by Libya and Syria, as well as the Syrian Air Force Intelligence, the Libyan External Security Agency, Libyan Internal Security Agency, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari..

119.    In providing such sponsorship, Libya, Syria, LESO, LISO, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari rendered material support to those actually carrying out the acts above described. The Plaintiffs are entitled to an award of punitive damages and same is hereby requested against the defendants , jointly and severally, in accordance with the provisions 28 U.S.C. 1605A(c)

120.    As required by 28 U.S.C. 1605A(c), General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari were acting within the scope of their duties when they supplied, facilitated or authorized the provision of material support to the ANO and the execution of the hijacking of Flight 648, and accordingly Libya and Syria are vicariously liable for the acts of these officials, employees and/or agents.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate and heirs of Scarlett Rogencamp, Patrick Baker and Jackie Nink Pflug demands that judgment be entered, jointly and severally, against Defendants in the amount of **ONE BILLION US DOLLARS ($1,000,000,000.00)** for each of them, and their costs expended.

The award of punitive damages, as requested, is to punish Libya, Syria, LESO, LISO, General Muhammad al-Khuli, Mu'ammar al-Qadhdhafi, Major Abdallah al-Sanusi, Ibrahaim al-Bishari for their conduct in supporting terrorism and the terrorist murderous acts described herein, and to send a message to them and others that the United States of America and its citizens responds to terror and murder with the application of orderly justice.

## ADDITIONAL RELIEF REQUESTED

Plaintiffs request leave of Court to amend this Complaint as the interests of justice require.

Dated: February 12, 2008

Respectfully Submitted,

HEIDEMAN NUDELMAN
 & KALIK, P.C.
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-463-1818
Telefax:    202-463-2999

By:___ */s/ Richard D. Heideman*___
   */s/ Tracy Reichman Kalik*___
   Richard D. Heideman (No. 377462)
   Noel J. Nudelman (No. 449969)
   Tracy Reichman Kalik (No. 462055)

29

*Of Counsel for Plaintiffs:*

PERLES LAW FIRM
Steven R. Perles (No. 326975)
Edward MacAllister
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax:     202-955-3806

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Patrick Scott Baker, et al.              :
                                         :
            Plaintiffs,                  :
                                         :
            v.                           :
                                         :     Case Number 03-cv-0749 (GK)
Socialist People's Libyan Arab           :
Jamahirya, et al.                        :
                                         :
            Defendants.                  :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . :

**ORDER**

This matter having come before the Court on the Plaintiffs' Motion For Leave To

File A Second Amended Complaint Pursuant To The Enactment Of and In Compliance

With Pub.Law. 110-181, Section 1083(c) and Memorandum in Support Thereof, and the

Court having been sufficiently advised,

IT IS HEREBY ADJUDGED AND ORDERED on this the _____ day of

February 2008,

1. The Clerk is directed to return this matter to an open/active case on the
   Court's docket; and

2. Pursuant Pub. Law No. 110-181, Sec. 1083(c)(2), Plaintiffs are granted
   leave to file the Second Amended Complaint, attached as Exhibit C to
   their motion,  to reflect that this matter should be given the effect as if
   the case had originally been filed under 28 U.S.C.§ 1605A(c), and to
   assert causes of action under this new

3.  The Clerk is directed to file the Second Amended Complaint as a
    separate entry on the case docket.  Upon the filing of the Second

1

Amended Complaint, Defendants shall answer or otherwise plead thereto in accordance with the Federal Rules of Civil Procedure.

4. Plaintiffs shall have until February 22, 2008 to file their Motion for Reconsideration of this Court's June 30, 2005 Order pursuant to Fed. R. Civ. P. 54(b); Defendants shall have until March 5, 2008 to file any opposition thereto, and Plaintiffs shall have until March 12, 2008 to file a Reply Brief, after which said Motion shall stand submitted to the Court for ruling thereon, subject to further Order of this Court.

IT IS SO ORDERED BY THE COURT on this the _____ day of February, 2008.

_____

Hon. Gladys Kessler.
United States District Court.

# Exhibit B

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


PATRICK BAKER,  ET AL,        .    DOCKET NUMBER:  CA 03-749
                             .
          Plaintiff,         .
                             .
     vs.                     .    Washington, D.C.
                             .    May 15, 2008
GREAT SOCIALIST PEOPLE'S     .
LIBYAN ARAB JAMAHIRIYA,      .
ET AL                        .    10:15 A.M.
                             .
          Defendants.        .
. . . . . . . . . . . . .    .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE GLADYS KESSLER
A UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:          RICHARD D. HEIDEMAN, ESQUIRE
                            HEIDEMAN NUDELMAN & KALIK, P.C.
                            1146 19th Street, NW
                            5th Floor
                            Washington, D.C.  20036
                            (202) 463-1818
                            (202) 463-2999 (fax)
                            rdheideman@heidemanlaw.com

                            EDWARD McALLISTER
                            THE PERLES LAW FIRM
                            1146 19th Street, NW
                            5th Floor
                            Washington, D.C.  20036
                            (202) 955-9055
                            (202) 955-3806 (Fax)

2

TRACY REICHMAN KALIK, ESQUIRE
HEIDEMAN, NUDELMAN, KALIK, PC
1146 19th Street, NW
Washington, D.C.  20036
(202) 463-1818
(202) 463-2999
trkalik@hnklaw.com


FOR THE DEFENDANT:        CHRISTOPHER M. CURRAN, ESQUIRE
WHITE & CASE, LLP
701 13th Street, NW
Washington, D.C.  20005-3807
(202) 626-3600
(202) 639-9355 (fax)
ccurran@whitecase.com

CHARLES MOORE, ESQUIRE
WHITE & CASE, LLP
701 13th Street, NW
Washington, D.C.  20006-3807
(202) 626-3600
(202) 639-9355 (fax)

ERIC L. LEWIS, ESQUIRE
BAACH, ROBINSON & LEWIS
1201 F Street, NW
Suite 500
Washington, D.C.  20004
(202) 833-8900
(202) 466-5738 (Fax)
eric.lewis@baachrobinson.com

ANNE K. TOOMEY, ESQUIRE
BAACH, ROBINSON & LEWIS
1201 F Street, NW
Suite 500
Washington, D. C.  20004
(202) 833-8900
(202) 466-5738 (fax)
katherine.toomey@baachrobinson.com

3

```
THE COURT REPORTER:          SUSAN PAGE TYNER, CVR-CM
                             Official Court Reporter
                             United States District Court
                             333 Constitution Avenue, N.W.
                             Room 6523
                             Washington, D.C.  20001
                             (202) 371-2230
                             susantyner@verizon.net

     Computer aided transcript prepared with the aid of
SpeechCAT.
```

4

```
 1                    P R O C E E D I N G S
 2            THE COURT:  We are now ready on my civil matter,
 3    and this is Patrick Baker versus, essentially, Libya, and
 4    would everyone come forward and please identify themselves
 5    for the record.
 6            For the plaintiff we have Mr. Heideman, right?
 7            MR. HEIDEMAN:  Richard D. Heideman, lead counsel
 8    for the plaintiff, and with me is my law partner, Tracy
 9    Kalik, and also with us today is Edward McAllister,
10    associate for the Perles law firm, as Mr. Perles is unable
11    to be here since he is out of town.
12            THE COURT:  All right.  And we have new counsel
13    for the defendants.  Let me make sure that I get all of this
14    right.
15            Counsel for the State of Libya.
16            MR. CURRAN:  Mr. Curran, Your Honor.  Good
17    morning.
18            THE COURT:  Good morning.
19            MR. CURRAN:  I'm with law firm of White and Case.
20    I am accompanied this morning by my associate, Charles
21    Moore, and we represent the three Libyan state defendants,
22    Your Honor.
23            THE COURT:  Now wait, this is Mr. Moore, is that
24    right?
25            MR. CURRAN:  Yes.
```

5

1          THE COURT:  Have you entered an appearance?

2          MR. CURRAN:  He has not, Your Honor.

3          THE COURT:  Oh, I didn't have his name down.

4    Okay.  He has to do that.

5          MR. CURRAN:  We will do that, Your Honor.

6          THE COURT:  Most practically because that is the

7    way that he gets everything on ECF.

8          MR. CURRAN:  Yes.  Thank you, Your Honor.

9          THE COURT:  All right.  And for the individual

10   defendants?

11         MR. LEWIS:  Good morning, Your Honor.  Eric Lewis

12   of Baach, Robinson & Lewis, and with me is my partner, Kate

13   Toomey.

14         THE COURT:  Good morning.

15         MR. LEWIS:  On behalf of the individual

16   defendants.

17         THE COURT:  All right.  As everybody knows, these

18   cases are very lingering cases, but at least I'm going to

19   make an attempt to get this one moving again.  Let me start

20   out with some questions.

21         First of all, I assume that defense counsel know

22   that there is a related case filed, 08-505.  I have no idea

23   -- I suspect service has not been made yet.

24         Mr. Heideman is that correct.

25         MR. HEIDEMAN:  That is correct.  Service has not

6

1  yet been made, and I don't know, nor have I asked opposing

2  counsel yet as to whether or not they will have authority to

3  accept service.

4          I was going to ask them out of the presence of the

5  court and then proceed accordingly, because the court will

6  recall, this issue came up ten days ago in other Libyan

7  cases with other counsel.  They indicated that they were not

8  authorized to accept service.  I don't know if Mr. Curran is

9  able to answer that.

10          THE COURT:  I am going to ask Mr. Curran that

11  right now.

12          The case is obviously related.  It involves the

13  same incident.  It involves -- I don't remember if Ms. Pflug

14  is -- yes, she is a plaintiff in the case before me.

15          Mr. Curran?

16          MR. CURRAN:  Your Honor, all of the facts you have

17  just stated are true.  In fact it appears to me that there

18  is an exact overlap of plaintiffs and defendants in this new

19  action, which to us raises the question of why it was filed

20  at all?

21          THE COURT:  Well, it was filed under the new --

22  well, again, I believe, and Mr. Heideman will correct me if

23  I am wrong, there was great concern about missing the

24  deadline under the new statute.

25          I think there was a motion to amend the complaint

7

1   pending in front of me.  I think Mr. Heideman, to use the

2   vernacular, played it safe by filing his new complaint

3   because he was afraid that I might not get to that new

4   motion in time.

5           Is that a yes or a no?

6           MR. HEIDEMAN:  That is correct, Your Honor.  Both

7   cases do include exactly the same parties.  The second case

8   is styled Pflug rather than Baker for easy distinction.

9   Otherwise, it is exactly the same.

10          MR. CURRAN:  Your Honor, we will entertain the

11  request that we accept service of process, not only in this

12  case but also -- I took to heart what I overheard Your

13  Honor say in the Lloyd's Buonocore hearing a couple of weeks

14  ago.

15          So as long as we are comfortable that it is not

16  creating an undue burden on the Libyan defendants, we will

17  entertain that request.  But I will kind of persist with the

18  issue.

19          Now that Your Honor has allowed the amendment of

20  the complaint under the new statute, it raises in my mind

21  the question of why is it necessary to have what appears to

22  be a wholly duplicative action, which could add burdens to

23  not only the parties but to the court if that action were to

24  proceed and presumably be consolidated with this action?

25          So we want to get a better understanding of

8

1    exactly why there is this unusual posture of a wholly

2    duplicative action running side-by-side with an existing

3    action.

4            THE COURT:  Well, Mr. Heideman, what do we need to

5    do at this point in your view?  Is there any reason that we

6    cannot make a choice between one or the other of these two

7    cases?

8            MR. HEIDEMAN:  If the Libyans accept service, and

9    we will have to wait for Mr. Curran to determine that with

10   his client -- once service is accepted, I think we will need

11   to see, Your Honor, what their posture is, which Mr. Curran

12   and I can cooperatively discuss, also out of the presence of

13   the court, regarding the defenses they intend to raise in

14   Pflug.

15           They have raised, as the court well knows in

16   Baker, various constitutionality issues regarding the new

17   statute.

18           Baker, in the second amended complaint that you

19   have allowed to be filed, is present before the court both

20   pursuant to the original 1605(a)(7), to which they have

21   already answered, the court may recall; but then pursuant to

22   the second amended complaint, that is pending pursuant to

23   both 1605(a)(7) and the new 1605(a).   They have raised

24   constitutionality issues, and the court has set a briefing

25   schedule on those motions.

9

1       It may well be as it relates to Pflug that Pflug

2  could, in the near term, be consolidated and not cause an

3  inefficiency of justice, or a wasting of resources, or

4  duplicate efforts, and I will confer with Mr. Curran on that

5  once he knows about the service issue.

6       The last point that I will make, Your Honor, is

7  that we do need to be careful because of the adoption of the

8  -- what is referred to as the Lautenberg specter amendment

9  to the FSIA that created 1605(a) and all of the issues, not

10 only in this case, but other Libya and other cases where

11 various defendants are raising various constitutionality but

12 other new arguments.

13      We just need to be sure that if somehow or another

14 something were to happen to one, the clients would not lose

15 their rights to still be fully and properly before the

16 court, and we will address that.

17      THE COURT:  Do I have all counsel in this case who

18 are counsel in the new case?  And I will ask it a little

19 differently.

20      In your new case did you sue individuals

21 personally?

22      MR. HEIDEMAN:  Yes.  I believe we sued them

23 exactly the same way, but of course there has been no entry

24 of appearance yet, so there is no way to know about defense

25 counsel.

10

1          Plaintiffs' counsel is exactly the same.

2          THE COURT:  Mr. Lewis, do you think you're going

3   to come in on that case, or do not know at this point?

4          MR. CURRAN:  Your Honor, Mr. Curran again.

5          I think I am probably in a better position to

6   address that since I'm the national coordinating counsel.

7          Frankly, I do expect that I would be representing

8   the state defendants in the Pflug action, and Mr. Lewis and

9   his colleagues would be representing the individuals in that

10  action.

11         And if I may add one other point?  I can assure

12  Your Honor that any reticence on the part of any of the

13  defendants -- maybe I should only speak for the Libyan state

14  defendants -- to accept service of process, that will not be

15  motivated by a desire for delay.

16         We are not seeking any delay.  In fact if we

17  conclude that it is more efficient and proactive to accept

18  service of process and it does not create any undue

19  difficulties or burdens, we will do that.

20         THE COURT:  Well, this is how I think we should

21  proceed then.  I think I'm going to be needing to drag you

22  all down again, because that is the only way I find out what

23  is going on, and sometimes it moves everybody to get

24  together and talk, and you all have to do that.

25         I would think that in 30 days or less we could

11

1    have a status in this case and 08-505 to not discuss these

2    issues but rather for counsel to report back to me as to

3    what success you have had in trying to resolve these

4    questions.

5         I would also ask that two days before that status

6    -- it is just always helpful to have this -- counsel file a

7    joint praecipe telling me that.  It prepares me in advance,

8    and it gives me a chance to think through what questions I

9    will have.

10        Let's see now.  I want to say one other thing.

11   We could do it the 16th.  Actually that is a good day.  What

12   about Monday, June 16 at 10 o'clock, is that agreeable?

13        MR. HEIDEMAN:  That is fine for plaintiffs, Your

14   Honor.  Thank you.

15        MR. CURRAN:  That is fine for all counsel on the

16   defense side, Your Honor.

17        THE COURT:  Good.  Let me get this down everybody.

18        I am fully aware that there are many thorny legal

19   issues at least being raised with regard to the new

20   legislation and that they will all have to be litigated,

21   and I am also fully aware that everybody has to think

22   through what steps fully protect their clients in these

23   cases.

24        To the extent that counsel have no substantive

25   problems with this, I would prefer that we work with case

12

1    08-505 and be able to dismiss 03-749 without prejudice.

2         Now I know that there is a briefing schedule, but

3    it seems to me that we can fold in some of those dates to

4    08-505 if service is accepted and if all counsel are

5    comfortable with proceeding in that basically as the case --

6    not basically.  As the case.

7         If that is not possible, then so be it, and Mr.

8    Heideman is shaking his head no.

9         Tell me why not, Mr. Heideman?  If 08-505 -- and

10   nobody is committed to what they are saying today, because I

11   know everybody has to do some thinking through.  But if 08-

12   505 is literally identical to the amended complaint in 03-

13   749, why can't you just proceed in 08-505?

14        MR. HEIDEMAN:  May it please the court, when we

15   filed Pflug for exactly the reasons that you indicated,

16   because of the deadline pursuant to the legislation signed

17   by the President on January 289t, 2008 that gave the 60-day

18   window, we filed the Pflug case not just for protective

19   reasons, but we filed it specifically under the new 1605(a).

20        I mentioned in my earlier comments to the court

21   that the original pending case, Baker, was originally filed

22   under 1605(a)(7), and then when you allowed the second

23   amended complaint, that second amended complaint, even

24   though it is all the same parties, that second amended

25   complaint pleads both 1605(a)(7), the old statue shall we

13

1    say, and 1605(a).

2          So if we did what the court has indicated might be

3    the court's preference, and I appreciate the court

4    indicating that these are thorny issues -- we fretted over

5    how to handle this, and think we did the very best that

6    could be done within the 60-day window to protect the

7    clients.

8          But if we did dismiss the original Baker case, it

9    would leave the Pflug plaintiffs, although the same

10   plaintiffs, only in court under 1605(a).  And if the

11   arguments that the Libyan state defendants, and separately

12   the Libyan individual defendants, will be making as to

13   constitutionality or things regarding this new statute, if

14   the new statute were later determined by you or on appeal to

15   not be a valid statute, our clients, A, would be out of

16   court, and B, we would have lost the one, or two, or three

17   more years that all of this might take.

18         So we will take it under advisement, and I feel

19   sure that Mr. Curran, and his counsel, and our firm, and new

20   counsel for the individual defendants will work

21   cooperatively.

22         The court did not make mention to it yet today,

23   and maybe it is on your agenda, but there is one scheduling

24   matter I just want to remind the court of pursuant to your

25   order of the last 48 hours.  I would like to brief you on

14

1    that if you would like to be briefed before leave.

2           THE COURT:  My recollection is it was set for May

3    28, is that right??

4           MR. HEIDEMAN:  The Certain Underwriters case,

5    which is the Lloyd's of London Insurers, that case is set

6    for May 28 at 3:30 before the magistrate, and your order

7    indicates that it was being referred and could be held at

8    the same time.

9           It has not yet been set by Judge Kay, and I am not

10   making any request.  I simply wanted you to know the Certain

11   Underwriters case is specifically set for May 28 at 3:30.

12   Judge Kay will determine if this case, the Baker case, will

13   be dealt with at the same time or not.  We will await Judge

14   Kay's order.

15          We will work with Mr. Curran not only on that

16   issue as I pledged to you when we were in court on the other

17   two cases, but we will work on the issues that you have

18   raised today expeditiously with Mr. Curran so that we can

19   see how we can cooperatively streamline all of these matters

20   well in advance of the June 16 date you have set for the

21   next status conference.

22          THE COURT:  And any -- your joint praecipe should

23   include the positions of the parties as to how you wish to

24   proceed in both cases.

25          MR. HEIDEMAN:  We will.  Thank you, Your Honor.

15

1          THE COURT:  Parties may be excused.

2      (Whereupon, the proceedings were adjourned.)

3                  - - - - -

4              CERTIFICATE OF COURT REPORTER

5      I certify that the foregoing is a correct transcript of

6  the proceedings in the above-captioned case.

7

8

9              SUSAN PAGE TYNER, CVR-CM

10              OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
Patrick Scott Baker, *et al.*,          )
                                        )
                    Plaintiffs,         )
                                        )
        v.                              )        Civil Action No. 03-cv-0749 (GK)
                                        )
Great Socialist People's Libyan Arab    )
Jamahirya, *et al*.                     )
                                        )
                    Defendants.         )
_____)

## JOINT PRAECIPE AS TO SERVICE AND CONSOLIDATION ISSUES

COME NOW the Parties, by and through their counsel and pursuant to the

Court's Order of May 15, 2008 hereby file this Joint Praecipe addressing: (1) service of

*Pflug v. Great Socialist People's Libyan Arab Jamahiriya*, Civil Action No. 08-505; and

(2) the Parties' views considering (a) possible consolidation of the related *Pflug* action

with this senior action or (b) dismissal of one of these related actions.

I.    Service of *Pflug v. Great Socialist People's Libyan Arab Jamahiriya*, Civil
      Action No. 08-505

      A.      The Plaintiffs have asked Counsel for the Libyan State Defendants and

              the Individual Defendants (collectively, "Defendants") to accept

              service pursuant to 28 U.S.C. 1608(a)(1).  The Defendants advised the

              Court at the Status Conference of May 15, 2008 that they would

              consider accepting service and have now advised Plaintiffs' counsel

              that they may agree to permit their respective counsel to accept service

              on their behalf under certain terms and conditions as are more

              completely set forth below.  However, before reaching the issue of

acceptance of service of process, as set forth in more detail below, Defendants assert that the *Pflug* action is wholly duplicative of the *Baker* action and on that basis the Court should dismiss the *Pflug* action, which Defendants assert would make the service issue moot. Plaintiffs have advised that they do not agree and that they will not voluntarily dismiss the *Pflug* action.  As set forth below, Plaintiffs believe the proper order is for the Defendants to accept service and then to answer, or otherwise plead, with the understanding that the related actions will proceed in a consolidated and coordinated fashion designed to avoid duplication of effort by the Parties and the Court.

B.     As stated above, the Defendants assert that the Court need not address service of the *Pflug* complaint if that complaint is dismissed as duplicative.  The Defendants hereby advise the Court that if the *Pflug* action is not dismissed, the Defendants would agree to permit their counsel to accept service of the *Pflug* complaint on their behalf under the following conditions:

1.   Counsel for the Libyan State Defendants would agree to accept service in respect of the Libyan State Defendants.  Counsel for the Individual Defendants would agree to accept service on behalf of those Defendants, only in their respective official capacities, and not in their personal capacities.

2.   With regard to Ibrahim Al-Bishari, counsel for the Individual Defendants is not in a position to accept service in any capacity

because Mr. Al-Bishari is deceased. Counsel for the Individual

Defendants and Plaintiffs' counsel are in the process of conferring

with the hope of reaching agreement concerning how Mr. Al-Bishari's

death should be dealt with in the context of this proceeding.

3.   Plaintiffs expressly reserve the right to serve the Individual

Defendants in their personal capacities, and to substitute the

representative of the Estate of Ibrahim Al-Bishari, should they choose

to do so at a later date.

4.   In accepting service as set forth herein, all Defendants expressly

reserve any and all defenses except as to service of process, including

but not limited to any and all jurisdictional defenses, any and all legal

and factual defenses the Defendants have raised in their respective

Motions to Dismiss the Second Amended Complaint in the *Baker*

action and Head of State Al-Qadhafi's defense that he is absolutely

immune from suit.

II.    Consolidation of *Pflug* with *Baker* or Dismissal of the *Pflug* Action

- Plaintiffs' Position:

A.        Plaintiffs maintain that the *Pflug* Action should be consolidated with

the *Baker* action, with the *Baker* action remaining as the lead action.

B.        Plaintiffs propose that any rulings made by the Court in either case

would apply, as appropriate, in the other; and all such rulings would

be preserved for appeal at the conclusion of the consolidated

proceedings. In addition, to the extent that they choose to do so,

3

Defendants shall be given an additional period of time to file any supplemental arguments to the pending Motions to Dismiss in *Baker,* which may address any outstanding issues or defenses that the Defendants wish to raise with respect to and as a result of the filing of the *Pflug* matter to the extent that they have not already been raised and briefed in the pending *Baker* Motions to Dismiss.

C.     Plaintiffs take this position because the Defendants have questioned whether the Plaintiffs may (a) amend and (b) proceed in *Baker* under 28 U.S.C. § 1605A pursuant to the Second Amended Complaint, which the Court has permitted to be filed, and Defendants have moved to dismiss.  Accordingly, Plaintiffs maintain that in order to fully preserve their various clients' interests and rights, both the *Baker* action and the *Pflug* action must continue to remain as active case matters and operational Civil Actions within the Court. Consolidation and the incorporation by reference of arguments made in *Baker* to pleadings to be filed in *Pflug* will permit the effective and efficient administration of justice without requiring unnecessary pleadings by the Defendants.  However, should the Court wish to entertain the issue of whether the *Pflug* action should be dismissed, *sua sponte*, as the Defendants suggest below, which the Plaintiffs oppose, Plaintiffs request that the Court set a briefing schedule to fully brief and argue the issue presented by the Defendants, which

Plaintiffs believe should be set forth in a motion by the Defendants and not in this Joint Praecipe.

- <u>Defendants' Position:</u>

A.      Defendants' position is that the *Pflug* action is wholly duplicative of the *Baker* action already pending before the Court and that the *Pflug* action should be dismissed.  Plaintiffs acknowledged at the status conference on May 15 that the *Pflug* action involves the same parties and claims as the *Baker* action, except that the *Pflug* action only asserts claims under 28 U.S.C. § 1605A.  Nearly four weeks before Plaintiffs filed the *Pflug* action, the Court permitted Plaintiffs to amend the *Baker* action.  Therefore, as Plaintiffs stated at the status conference, the *Baker* action now asserts claims under both 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605A.

B.      Accordingly, Defendants' position is that Plaintiffs should voluntarily dismiss *Pflug* as a duplicative action, or in the alternative that this Court should dismiss the *Pflug* complaint either on motion or *sua sponte*.  *See, e.g.*, *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980) (dismissing claim as duplicative of a pending claim that plaintiff had filed against the same defendants in the same court); *Mendlow v. Library of Congress*, Case No. 98-5165, 1999 WL 187762, at *1 (D.C. Cir. Feb. 17, 1999) (affirming *sua sponte* dismissal of claim on the alternative grounds that it was duplicative of another claim pending in another federal court).

Permitting the *Pflug* action to proceed only forces Defendants to expend unnecessary resources responding to this duplicative action (including the assertion of the defense that dismissal is appropriate because the action is duplicative).

C.       Plaintiffs do not consent and strenuously oppose a dismissal of *Pflug,* and request consolidation as set forth above.  *Pflug* was filed after the enactment of 28 U.S.C. § 1605A, which said newly-enacted legislation the Defendants have advised they intend to challenge. Plaintiffs assert to the Court that they cannot permit their clients to have either *Baker* or *Pflug* dismissed because of the risk of unintended consequences arising from Defendants' challenge to the newly-enacted legislation, which Defendants may argue alternatively affects *Baker* on the one hand, and *Pflug* on the other, in different ways.

D.       Defendants therefore reserve any and all available defenses, rights and immunities, except as to service of process, related to *Pflug*.  If the Court declines to dismiss *Pflug sua sponte*, Defendants request that the Court set a briefing schedule for the filing of dispositive motions related to *Pflug*.

The Parties are prepared to discuss these issues further with Court at the upcoming Status Conference presently scheduled before the Court on June 18, 2008.

Dated:  June 12, 2008                Respectfully Submitted,

**Counsel for the Plaintiffs**:


HEIDEMAN NUDELMAN
  & KALIK, P.C.
1146 19th Street, N.W.
Fifth Floor
Washington, DC  20036
Telephone:  202-463-1818
Telefax:  202-463-2999

By: _ /s/Richard D. Heideman_____
     _ /s/ Tracy Reichman Kalik_____
    Richard D. Heideman (No. 377462)
    Noel J. Nudelman (No. 449969)
    Tracy Reichman Kalik (No. 462055)


PERLES LAW FIRM, P.C

Steven R. Perles (No. 326975)
Edward MacAllister
1146 19th Street, N.W.
Fifth Floor
Washington, DC  20036
Telephone: 202-955-9055
Telefax:     202-955-3806



**Counsel for the Libyan State Defendants:**

WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: 202-626-3600
Facsimile:  202-639-9355

By:_____ /s/ Nicole E. Erb_____
    Christopher M. Curran (No. 408561)
    Francis A. Vasquez, Jr. (No. 442161)
    Nicole E. Erb (No. 466620)

**Counsel for the Individual Defendants**:

BAACH ROBINSON & LEWIS, PLLC
1201 F. Street, NW
Suite 500
Washington, DC  20004
Telephone: 202-833-8900
Facsimile:  202-466-5738


By:____*/s/ A. Katherine Toomey*_____
    Eric. L. Lewis (No. 394643)
    A. Katherine Toomey (No. 426658)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| PATRICK SCOTT BAKER, *et al.*,                 ) | |
|                                               ) | |
| *Plaintiffs*,                                 ) | |
|                                               ) | |
| v.                                            ) | Civil Action No. 03-749 (GK) |
|                                               ) | |
| GREAT SOCIALIST PEOPLE'S LIBYAN               ) | |
| ARAB JAMAHIRIYA, *et al.*,                     ) | |
|                                               ) | |
| *Defendants*.                                 ) | |
| _____ ) | |
| JACKIE NINK PFLUG, *et al.*,                   ) | |
|                                               ) | |
| *Plaintiffs*,                                 ) | |
|                                               ) | |
| v.                                            ) | Civil Action No. 08-505 (GK) |
|                                               ) | |
| GREAT SOCIALIST PEOPLE'S LIBYAN               ) | |
| ARAB JAMAHIRIYA, *et al.*,                     ) | |
|                                               ) | |
| *Defendants*.                                 ) | |
| _____ ) | |

## <u>ORDER</u>

Having reviewed and considered the Defendants Great Socialist People's Libyan Arab Jamahiriya, the Libyan Internal Security Organization, and the Libyan External Security Organization's (collectively the "Libyan State Defendants") Motion to Dismiss Duplicative Complaint, and the papers filed in support thereof, Plaintiffs' papers filed in opposition thereto, and the entire record herein, it is hereby

ORDERED, that the Libyan State Defendants' Motion to Dismiss is GRANTED, and the Plaintiffs shall elect, no later than 15 days after the date of this Order, which of the *Baker* or *Pflug* actions shall proceed.  Following Plaintiffs' election, the Court shall dismiss with prejudice the action that Plaintiffs have elected for dismissal.


SO ORDERED this _____ day of _____, 2008



_____
Gladys Kessler
United States District Judge